**TREASURER OF the STATE of Missouri–CUSTODIAN of the SECOND INJURY FUND, Appellant,**

v.

**James WITTE, Respondent.**

**Joseph Salviccio, Respondent,**

v.

**Treasurer of the State of Missouri, as Custodian of the Second Injury Fund, Appellant.**

**William Dyson, Respondent,**

v.

**Treasurer of the State of Missouri as Custodian of Second Injury Fund, Appellant.**

**Eric Buhlinger, Respondent,**

v.

**Treasurer of Missouri as Custodian of Second Injury Fund, Appellant.**

**Nos. SC 92834, SC 92867, SC 92842, SC 92850.**

Supreme Court of Missouri, En Banc.

Nov. 12, 2013.

456

Douglas B. Salsbury, The Miller/Salsbury Law Firm, Eureka, for James Witte.

Cara L. Harris, Kristin M. Frazier, Rochelle L. Reeves and Daniel A. Cunningham, Attorney General's Offices, Jefferson City, Springfield and St. Louis, for Treasurer of the State of Missouri as Custodian of Second Injury Fund.

Elizabeth J. Ituarte, Kriegel & Ituarte PC, St. Louis, for Joseph Salviccio.

James S. Haupt, St. Louis, for William Dyson.

Dean L. Christianson, Schuchat, Cook & Werner, St. Louis, for Eric Buhlinger.

PATRICIA BRECKENRIDGE, Judge.

The treasurer of the State of Missouri as custodian of the second injury fund ("the fund") appeals four separate decisions of the labor and industrial relations commission that determined the fund was liable for compensation to injured claimants. The fund claims that the commission misinterpreted and misapplied the law in those decisions by combining or "stacking" injuries to meet the statutory thresholds in section 287.220.1 [1] that trigger the fund's liability and by considering injuries that did not meet the statutory thresholds to calculate the extent of its liability. Af-

---

1. All statutory references are to RSMo Supp. 2012, unless otherwise indicated.

ter opinions by the court of appeals, this Court granted transfer due to the general interest and importance of the issues involved. Mo. Const. art. V, sec. 10. Because the cases all require interpretation of section 287.220.1, they are consolidated for opinion. This Court finds that the commission misapplied section 287.220.1 in triggering the fund's liability by combining preexisting permanent partial disabilities to meet the statutory thresholds. Nonetheless, Mr. Salviccio, Mr. Dyson, and Mr. Buhlinger each had a preexisting injury that met the thresholds, and this Court affirms the commission's awards in those cases. Mr. Witte did not have a preexisting disability that met the thresholds, and this Court reverses the commission's award in his case.

## Factual and Procedural History

The facts are undisputed in each case, and are as follows:

### Witte v. Treasurer

In April 2007, James D. Witte slipped and fell while at work, breaking his right leg and hip. He filed a claim for workers' compensation benefits against his employer, Show–Me Livestock Co-op., Inc., and the fund in July 2007. Mr. Witte and Show–Me Livestock settled his claim by stipulating that he had a permanent partial disability of 20 percent of the body as a whole, referable to the lumbar spine, and 30 percent of the right hip. His claim against the fund, however, was disputed. At a hearing before an administrative law judge, a medical expert testified that Mr. Witte had preexisting disabilities of diabetes, depression, anxiety, a spastic colon, back problems, a leg injury from a bike accident, and an eye condition that was surgically corrected.

The administrative law judge (ALJ) concluded that Mr. Witte "failed to sustain his burden of proof that he is entitled to permanent partial disability benefits" from the fund. The ALJ found that although Mr. Witte had multiple preexisting disabilities, none of them were significant enough to constitute a hindrance or obstacle to employment or to reach the thresholds set out in section 287.220.1.

Mr. Witte filed an application for review with the commission, which found that Mr. Witte suffered preexisting permanent partial disabilities of 10 percent of the body as a whole, referable to diabetes; 10 percent of the body as a whole, referable to gastrointestinal issues; 10 percent of the body as a whole, referable to psychiatric problems; 5 percent of the body as a whole, referable to his lumbar spine; and 10 percent of his right leg. The commission concluded that, instead of requiring each condition to meet the minimum thresholds set out in section 287.220.1, the ALJ should have determined whether Mr. Witte's "overall preexisting permanent partial disability" satisfied the 50–week minimum threshold. After converting all of Mr. Witte's preexisting disabilities into weeks of compensation, the commission combined them and determined his "overall preexisting permanent partial disability" to be 160.7 weeks, well above the 50–week threshold. It awarded Mr. Witte $8,478.55 of compensation from the fund.

### Salviccio v. Treasurer

In November 2008, Joseph Salviccio injured his left knee while employed with Western Supplies Company. Following surgery to repair his knee, he filed a workers' compensation claim against Western Supplies and the fund. Mr. Salviccio's claim against Western Supplies was settled for 20 percent permanent partial disability of the left knee.

An ALJ heard his case to determine the fund's liability and made the following con-

clusions concerning his preexisting disabilities: Mr. Salviccio's little finger on his left hand was permanently injured in 1995 during a work-related accident; he suffered ventral hernias in 1999 and 2005; and he was diagnosed with diabetes in 1995. Despite expert testimony of higher ratings, the ALJ found that the disability to Mr. Salviccio's little finger did not rise to 15 percent permanent partial disability and that neither his diabetes nor his hernias warrant 50 weeks of compensation. The AJL, therefore, determined that the fund was not liable for compensation because none of Mr. Salviccio's preexisting permanent partial disabilities rose to the level necessary to satisfy the statutory thresholds outlined in section 287.220.1.

Upon Mr. Salviccio's application for review, the commission concluded the ALJ's ratings of Mr. Salviccio's preexisting injuries were not supported by the evidence presented. It determined the evidence supported preexisting permanent partial disabilities of 50 percent of the little finger; 12.5 percent of the body as a whole, referable to diabetes; 4 percent of the body as a whole, referable to the 1999 hernia; and 3.5 percent of the body as a whole, referable to the 2005 hernia. Because Mr. Salviccio claimed multiple preexisting disabilities, the commission concluded that it was necessary to convert all of his preexisting disabilities to weeks of compensation and combine them to determine if they collectively met the statutory thresholds. After combining all of his preexisting disabilities, it found that Mr. Salviccio had 91 weeks of compensation, surpassing the 50-week threshold, and determined that the fund was liable. The commission awarded Mr. Salviccio $4,977.32 of compensation from the fund.

### Dyson v. Treasurer

In June 2008, William Dyson injured his right shoulder while at work and filed a workers' compensation claim against his employer, D & D Distributors, and the fund. He settled his claim with D & D Distributors for 25 percent permanent partial disability of the right shoulder. Five months prior to his shoulder injury, Mr. Dyson suffered a work-related neck injury[2] and he also injured his right ankle in 2001.

An ALJ determined that Mr. Dyson was entitled to workers' compensation benefits from the fund after concluding that his neck injury, with a 15 percent permanent partial disability of the body as a whole, met the minimum thresholds set forth in section 287.220.1. The ALJ also found that Mr. Dyson's disability due to his right ankle injury was not sufficient to meet the same thresholds.

After Mr. Dyson applied for review, the commission determined that his preexisting ankle injury should have been included in determining the fund's liability. It found that the injury resulted in 7.5 percent permanent partial disability of that extremity, converted that percentage to its equivalent number of weeks, and added it to Mr. Dyson's other injuries to determine that he met the thresholds for all of his injuries. Accordingly, the commission held the fund liable for all of his injuries and awarded Mr. Dyson $5,041.96 of compensation from the fund.

### Buhlinger v. Treasurer

In August 2008, Eric R. Buhlinger worked for Bryant Company as a laborer and a driver when the skid loader on which he was working "bucked," causing him to hit his head on a crossbar and lose con-

---

**2.** Mr. Dyson entered into a stipulation of compromise settlement with D & D Distributors regarding this prior injury for 15 percent permanent partial disability of the neck.

sciousness. As a result of the accident, Mr. Buhlinger suffered a concussion and sustained injuries to his neck, back, and left elbow. He filed a workers' compensation claim against Bryant Company and the fund. The claim against Bryant Company was settled for 27.5 percent of the body as a whole, referable to the neck; 5 percent of the body as a whole, referable to the concussion; and 5 percent of the left elbow.

An ALJ heard Mr. Buhlinger's case to determine the fund's liability and found that, from his last injury, Mr. Buhlinger sustained permanent partial in the same amounts as the settlement. During the hearing, there was testimony about Mr. Buhlinger's prior work-related injury to his left foot and ankle that occurred in 1990 or 1991. With regard to the prior injury, the ALJ found that Mr. Buhlinger had a preexisting permanent partial disability of 17.5 percent of the left ankle. The ALJ concluded the fund was liable because Mr. Buhlinger's permanent partial disabilities from the last injury, collectively, and preexisting permanent partial disability met the thresholds set forth in section 287.220.1. The ALJ awarded Mr. Buhlinger $6,782.10 of compensation from the fund.

The fund filed an application for review of the ALJ's award with the commission, arguing the ALJ erred in including Mr. Buhlinger's concussion and left elbow injuries in its calculation of the fund's liability because neither of those disabilities, standing alone, met the thresholds. The commission accepted the ALJ's award and decision.

## Standard of Review

Section 287.495.1 determines this Court's review of these cases:

Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

■ An appellate court will defer to the commission on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence. *Hornbeck v. Spectra Painting, Inc.* 370 S.W.3d 624, 629 (Mo. banc 2012). The Court reviews an issue of law *de novo*. *Difatta–Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008). An issue of statutory interpretation is a question of law, not fact. *City of St. Joseph v. Village of Country Club*, 163 S.W.3d 905, 907 (Mo. banc 2005).

## Fund Liability Under Section 287.220

■ The General Assembly enacted the statutes creating the fund and determining its liability in 1943. 1943 Mo. Laws 1068. The purpose of the fund is "to encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury." *Pierson v. Treasurer of State*, 126 S.W.3d 386, 389–90 (Mo. banc 2004). It encourages such employment by ensuring that an employer is only liable for the disability caused by the work injury. Any disability attributable to the combination of the work injury with preexisting disabilities is compensated, if at all, by the fund. *See* section 287.220.1.

The fund appeals the commission's decisions holding the fund liable for claimants' injuries and awarding claimants compensation from the fund. It claims the commission erred when it combined multiple preexisting permanent partial disabilities to meet the liability thresholds. It also claims the commission erred when it considered preexisting disabilities and disabilities from the last injury that did not meet the thresholds in calculating the amount of compensation the fund owed.

■■■■ Resolution of these claims requires this Court to examine the language set out in section 287.220.1. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *State ex rel. Unnerstall v. Berkemeyer,* 298 S.W.3d 513, 519 (Mo. banc 2009) (quoting *State ex rel. Nixon v. QuikTrip Corp.,* 133 S.W.3d 33, 37 (Mo. banc 2004)). If the language is unambiguous, this Court "must give effect to the legislature's chosen language." *State ex rel. Young v. Wood,* 254 S.W.3d 871, 873 (Mo. banc 2008). Only where the language is ambiguous will the Court resort to other rules of statutory construction. *Goerlitz v. City of Maryville,* 333 S.W.3d 450, 455 (Mo. banc 2011). This Court must strictly construe the provisions of the workers' compensation statutes. Section 287.800.

The fund's liability for permanent partial disability benefits is determined by section 287.220.1,[3] which states:

All cases of permanent disability where there has been previous disability shall be compensated as herein provided. Compensation shall be computed on the basis of the average earnings at the time of the last injury. If any employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed, and the preexisting permanent partial disability, if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, according to the medical standards that are used in determining such compensation, receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability, in an amount equal to a minimum of fifty weeks compensation, if a body as a whole injury or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. After the compensation liability of the employer for the last injury, considered alone, has been determined by an ad-

**3.** In 2013, the General Assembly amended section 287.220 to change eligibility for benefits for injuries occurring after January 1, 2014. 2013 Mo. Laws S.B. 1 (to be codified at section 287.220). Because the injuries in these cases occurred in 2007 and 2008, section 287.220.1, RSMo. Supp.2012, controls. *See Gervich v. Condaire,* 370 S.W.3d 617, 623 (Mo. banc 2012). Further, the amended statute expressly acknowledges that the revisions do not affect injuries before its effective date. 2013 Mo. Laws S.B. 1.

ministrative law judge or the commission, the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined by that administrative law judge or by the commission and the degree or percentage of disability which existed prior to the last injury plus the disability resulting from the last injury, if any, considered alone, shall be deducted from the combined disability, and compensation for the balance, if any, shall be paid out of a special fund known as the second injury fund, hereinafter provided for.

The fund's claims relate to the third and fourth sentences of this subsection of section 287.220. This subsection includes multiple concepts and is best understood when those concepts are considered separately and applied to the fund's claims.

### Thresholds Apply to Each Preexisting Disability or Injury

The fund's first claim is that multiple preexisting disabilities cannot be combined to meet the statutory thresholds, which implicates the third sentence of section 287.220.1. The third sentence prescribes the requirements for triggering the fund's liability. The first requirement to hold the fund liable is that the claimant must have "a preexisting permanent partial disability . . . of such seriousness as to constitute a hindrance or obstacle to employment." *Id.* The preexisting disability also must, "if a body as a whole injury, equal[ ] a minimum of fifty weeks of compensation or, if a

major extremity injury only, equal[ ] a minimum of fifteen percent permanent partial disability." *Id.* Additionally, the preexisting disability and the disability from the last injury[4] must combine in a way so that the degree of disability from the combined disabilities is "an amount equal to a minimum of fifty weeks compensation, if a body as a whole injury or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability." Finally, the combination of the preexisting disability and the disability from the last injury must be "substantially greater than that which would have resulted from the last injury, considered alone and of itself." *Id.*

■ In other words, the third sentence of section 287.220.1 permits a claimant to obtain compensation from the fund when the claimant demonstrates that: (1) the claimant has a preexisting permanent partial disability of such seriousness as to constitute a hindrance or obstacle to employment; (2) the percentage of disability attributable to the preexisting disability equals a minimum of 50 weeks of compensation for a body as a whole injury or 15 percent for a major extremity injury; (3) the combination of the preexisting disability and the disability resulting from the last injury equals a minimum of 50 weeks of compensation for a body as a whole injury or 15 percent for a major extremity injury; and (4) the combined disability is substantially greater than the disability that would have resulted from the last injury considered alone.[5] When these requirements are

---

4. The statute uses the terms "last injury" and "subsequent injury" interchangeably. *See* section 287.220.1. Many cases also refer to the last injury as the "primary injury." *E.g., Schussler v. Treasurer of State-Custodian of Second Injury Fund,* 393 S.W.3d 90, 95 (Mo. App.2012); *Carkeek v. Treasurer of Missouri-*

*Custodian of Second Injury Fund,* 352 S.W.3d 604, 608 (Mo.App.2011).

5. Some cases incorrectly state that section 287.220.1 requires the combined disability to be substantially greater than the sum of the preexisting disability and the disability from the last injury. *See Hutson v. Treasurer of Missouri,* 365 S.W.3d 269, 272 (Mo.App.

met, the employer at the time of the last injury is liable for only the degree of disability that would have resulted from the last injury if there was no preexisting disability. *Id.*

The first error claimed by the fund focuses on the second requirement of the third sentence, i.e., the percentage of disability attributable to the preexisting disability equal a minimum of 50 weeks of compensation, if a body as a whole injury, or 15 percent permanent partial disability, if a major extremity injury. The fund claims the commission misapplied these statutory thresholds when it combined claimants' preexisting disabilities to meet them. It asserts that before a claimant is eligible for compensation from the fund, section 287.220.1 requires *each* preexisting disability to meet either the 50–week threshold, if an injury to the body as a whole, or the 15 percent permanent partial disability threshold, if an injury to a major extremity.

The question of whether section 287.220.1 allows for combining, or "stacking," of disabilities to meet the thresholds is answered by the statute's plain and unambiguous language. When defining the thresholds for the fund's liability, section 287.220.1 refers to "any employee who has *a* preexisting permanent partial *disability* whether from compensable injury or otherwise" and allows for compensation when "*the* preexisting permanent partial *disability*, if *a* body as a whole *injury*, equals a minimum of fifty weeks of compensation or, if a major extremity *injury* only, equals a minimum of fifteen percent permanent partial *disability.*" (Emphasis added). Further, a permanent partial disability is defined as "*a disability* that is permanent in nature and partial in degree." Section 287.190.6 (emphasis added). Significantly, the statute repeatedly refers to "*a* disability" and "*the* disability," as opposed to "disabilities." The statute also uses the singular "injury" rather than the plural "injuries."

The legislature's use of the singular form is shown to be intentional when the language of the third sentence is contrasted with the language governing permanent total disability in the fifth sentence. The fifth sentence of section 287.220.1 discusses compensation for permanent total disability and provides that:

> If the *previous disability or disabilities*, whether from compensable injury or otherwise, and the last injury together result in total and permanent disability, the minimum standards under this subsection for a body as a whole injury or a major extremity injury shall not apply and the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered alone and of itself. . . .

(Emphasis added). In the context of permanent total disability, the legislature used the language "previous disability or disabilities" to provide specifically for consideration of multiple disabilities. Section 287.220.1. The legislature's use of differ-

---

2012); *Cartwright v. Wells Fargo Armored Services,* 921 S.W.2d 165, 167 n. 3 (Mo.App. 1996); *Fletcher v. Second Injury Fund,* 922 S.W.2d 402, 407 (Mo.App.1996). The "substantially greater" language in the third sentence of the statute, however, is a comparison between the combined disability and "that which would have resulted from the last injury, considered alone and of itself." Section 287.220.1. The formula for determining the amount of the award, set out in the fourth sentence, requires the combined disability be greater than the sum of all of the preexisting disabilities and the disability from the last injury, but there is no requirement that the combined disability be *substantially* greater. To the extent these cases misstate the requirements for triggering the fund's liability, the cases are overruled.

ent terminology for permanent partial disability and permanent total disabilities is presumed intentional and for a particular purpose. *See State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010). Therefore, in the third sentence, it is presumed the legislature intended to require a single preexisting permanent partial disability, considered in isolation, to meet the thresholds before triggering the fund's liability. The commission's method of combining several lesser injuries to meet the thresholds is a misapplication of section 287.220.1.[6]

It is possible that multiple injuries can give rise to a single disability. Such a situation is not contemplated by the statute's language, however. In setting the thresholds for a single preexisting disability, the statute refers to "a body as a whole injury" and "a major extremity injury." Section 287.220.1. Accordingly, while the term "disability" could refer to multiple injuries, section 287.220.1 sets the thresholds for a preexisting disability based on a single injury.

The error of the commission's interpretation is also apparent from the commission's difficulty in attempting to combine a major extremity injury with a body as a whole injury. In Mr. Witte's case, the commission stated:

> The legislature chose two different units of measurement to describe the thresholds: "fifty weeks of compensation" for preexisting disabilities of the body as a whole; and "fifteen percent permanent partial disability" for a preexisting disability to a major extremity only. We believe the legislature rested on different units of measurement to foster arithmetic simplicity.
>
> . . .

But where there is more than one preexisting disability, the simplicity described above cannot be achieved. In that event, we need a method to combine the various disabilities to determine claimant's overall preexisting disability as of the moment of the primary injury. In order to combine the disabilities for comparison to the threshold, the disabilities must be converted to a common unit of measure. The legislature selected weeks of compensation as the common unit of measure.

Thus, to be able to combine disabilities from major extremity injuries with disabilities from body as a whole injuries, the commission found it necessary to convert all preexisting disabilities to a common unit of measurement—weeks. This method of calculation is not supported by the language of section 287.220.1. Interpreting the statute to allow the conversion of all preexisting disabilities to weeks of compensation compels the addition of concepts or language, which the commission cannot do. *See State ex rel. Mills v. Allen*, 344 Mo. 743, 128 S.W.2d 1040, 1046 (1939). The commission's method of calculating the thresholds by combining injuries is not consistent with the language of section 287.220.1 and already has been rejected. *See Motton v. Outsource Int'l*, 77 S.W.3d 669, 674–75 (Mo.App.2002).

In *Motton*, the court of appeals held that the commission erred in considering whether a major extremity disability met the thresholds in terms of weeks, rather than in terms of percent of permanent partial disability. *Id.* According to the court, the language of the statute clearly requires a disability from major extremity injury to be measured in terms of the

---

**6.** This interpretation is consistent with the commission's treatment of multiple preexisting disabilities in *Cardwell v. Treasurer of State of Missouri*, 249 S.W.3d 902, 907 (Mo. App.2008) (discussing how the commission disregarded disabilities that did not individually meet the thresholds).

percentage of permanent partial disability.[7] *Id.* It determined that "[i]n setting the threshold for [the fund's] liability, the legislature chose to define disability for the body as a whole in terms of 'weeks,' but for a major extremity in terms of a "percentage," and it found "[h]ad the legislature intended to set the threshold for disability for a major extremity on a minimum number of 'weeks', rather than a minimum "percent". of disability, it could have done so as it did when it set the threshold for disability for the body as a whole." *Id.*

As *Motton* demonstrates, the statute does not permit the conversion of a major extremity disability into weeks because it clearly requires that a major extremity disability be measured by the percentage of permanent partial disability. Without converting all the injuries to a common unit of measurement, a major extremity disability cannot be combined with a body as a whole disability. Considering the legislature did not include a procedure for combining disabilities or define both types of disabilities in terms of weeks, it did not intend to allow for combining different types of disabilities. Instead, section 287.220.1 expresses the minimum thresholds only in terms of a singular injury to either the body as a whole or a major extremity.[8]

Considering the clear and unambiguous language of the statute and the lack of a methodology for combining injuries, section 287.220.1 does not permit combining multiple permanent partial disabilities to meet the thresholds for the fund's liability and, therefore, requires each disability be measured against the thresholds individually. This interpretation is consistent with the legislature's purpose in enacting the thresholds.

The legislature added the numerical thresholds for triggering the fund's liability to the statute in 1993. Before then, it lacked any numerical thresholds. *Compare* section 287.220.1, RSMo Supp.1992, *with* section 287.220, RSMo 2000. Consequently, Missouri courts required parties to demonstrate an "industrial disability" in order "to insure · that [section] 287.220 would be used only for those who had previously suffered a bona fide work-related disability." *Leutzinger v. Treasurer of the State,* 895 S.W.2d 591, 592 (Mo.App. 1995). *See Wilhite v. Hurd,* 411 S.W.2d 72, 77 (Mo.1967), *overruled on separate grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003). By amending the statute, the legislature replaced the judicially created standard with the current, more precise thresholds. *See* section 287.220.1.

---

7. The court rejected the notion that the 15 percent permanent partial disability threshold for a major-extremity injury is ambiguous for failing to specify a percentage of disability for different levels of a major extremity. *Id.* at 674. It found that the legislature set the threshold at 15 percent permanent partial disability for all major-extremity injuries, regardless of the level of the injury. *Id.*

8. Claimants rely on the court of appeals decision in *Shipp v. Treasurer of State* for combining injuries to meet the thresholds. 99 S.W.3d 44 (Mo.App.2003) *overruled on separate grounds by Hampton v. Big Boy Steel*

*Erection,* 121 S.W.3d 220 (Mo. banc 2003). In *Shipp,* the court held that when "a claimant has multiple injuries to a major extremity at various levels, it may be appropriate, depending on the facts and circumstances, to rate the percentage of disability to the entire major extremity." *Id.* at 53. None of the claims at issue here involve multiple preexisting injuries at various levels of a major extremity. Because these cases do not present the same issue, this Court does not address whether injuries to the same major extremity require a different application of section 287.220.1.

The statutory thresholds serve to make clear which preexisting conditions are considered sufficiently serious to trigger the fund's liability. *Hedrick v. Chrysler Corp.*, 900 S.W.2d 233, 235 (Mo.App.1995). Accordingly, the minimum thresholds exclude *de minimus* injuries from triggering liability. Combining injuries to meet statutory thresholds not only would allow *de minimus* injuries to trigger the fund's liability but also would encourage it—contrary to the purpose of the 1993 amendment.

In Mr. Buhlinger's case, the fund claims the commission erred in combining multiple disabilities resulting from his last injury to meet the thresholds. Unlike with *preexisting* permanent partial disabilities, however, section 287.220.1 does not require permanent partial disabilities from the *last* injury to meet a numerical threshold. In referring to the last injury, section 287.220.1 states:

> If any employee ... receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability, in an amount equal to a minimum of fifty weeks compensation, if a body as a whole injury or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, caused by the combined disabilities is substantially greater....

That language imposes the 50–week or 15 percent permanent partial disability thresholds on the combined disability, not a disability resulting from the last injury. When the threshold language is removed, it is more apparent that the threshold language refers to "the degree or percentage of disability ... caused by the combined disabilities." Section 287.220.1.

■ The legislature perhaps included this requirement to reinforce its intent that the preexisting disabilities be of sufficient seriousness to meet the thresholds.

Although the purpose is not clear, the statute's language is clear in that "the degree or percentage of disability ... caused by the combined disabilities" must equal at least 50 weeks of compensation, if a body as a whole injury, or 15 percent permanent partial disability, if a major extremity injury. *See id.* This Court must interpret statutes by their plain and ordinary language, and "[w]here there is no ambiguity, [it] cannot look to any other rule of construction." *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. banc 1996). By its plain and ordinary language, section 287.220.1 does not require a disability from the last injury to meet a numerical threshold to trigger liability. Consequently, this Court overrules any case to the extent that it states disabilities from the last injury must meet the thresholds. *Hutson v. Treasurer of Missouri as Custodian of Second Injury Fund*, 365 S.W.3d 269 (Mo. App.2012); *Palazzolo v. Joe's Delivery Serv., Inc.*, 98 S.W.3d 645 (Mo.App.2003); *Reese v. Gary & Roger Link, Inc.*, 5 S.W.3d 522 (Mo.App.1999); *Conley v. Treasurer of Missouri*, 999 S.W.2d 269 (Mo.App.1999); *Fletcher v. Second Injury Fund*, 922 S.W.2d 402 (Mo.App.1996); *Smart v. Missouri State Treasurer*, 916 S.W.2d 367 (Mo.App.1996).

**Every Injury is Considered W hen Calculating the Amount of Compensation**

■ Once the fund's liability has been triggered by meeting the requirements in the third sentence, the fourth sentence of section 287.220.1 provides the mechanics for determining the amount of compensation for which the fund is liable. "After the compensation liability of the employer for the last injury, considered alone, has been determined ..., the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was

sustained shall then be determined." *Id.* Next, "the degree or percentage of disability which existed prior to the last injury plus the disability resulting from the last injury, ... considered alone, shall be deducted from the combined disability," and the fund must pay the balance. *Id.* Simply put, the fund is liable only for the degree of the combined disability that exceeds the numerical sum of the preexisting disabilities and the disability from the last injury. This excess for which the fund is liable is referred to as the synergistic effect of the combined disabilities. *See Pierson,* 126 S.W.3d at 389.

In the cases at issue, the commission considered all of claimants' preexisting permanent partial disabilities in calculating the amount of the award after combining them to meet the thresholds. The fund claims that the commission erred in including below-threshold preexisting disabilities in its calculation of the awards. Claimants counter that section 287.220.1 requires an ALJ to use all of a claimant's injuries, including those that did not satisfy the thresholds, when determining the amount of compensation. Therefore, claimants argue that even if the commission impermissibly used below-threshold injuries to trigger liability, it correctly determined the amount of compensation to which they are entitled.

Claimants' interpretation of section 287.220.1 is supported by the plain and ordinary meaning of the statute's language. The statute directs the ALJ to determine the degree or percentage of disability attributable to "all injuries or conditions existing at the time the last injury was sustained." Section 287.220.1. The plain and ordinary meaning of this language is that all preexisting injuries, without the threshold limitation, are to be considered in calculating the amount of compensation. The legislature added a

numerical threshold to the third sentence in section 287.220.1 for determining when the fund's liability is triggered. It could have added similar language to the fourth sentence to limit what can be used in computing a claimant's award, but it did not do so. Rather, it expressly requires all injuries or conditions existing at the time of the last injury to be considered.

■ The fund asserts that the thresholds are rendered ineffective by interpreting section 287.220.1 in a way to permit considering below-threshold injuries in determining the amount of compensation. The language plainly requires consideration of "all" injuries, which is contrary to an interpretation that "all" means all injuries that meet the thresholds. A court is not at liberty to "add words or requirements by implication where the statute is not ambiguous." *Sherf v. Koster,* 371 S.W.3d 903, 907 (Mo.App.2012). Additionally, the fund's argument that such an interpretation affects the purpose of the thresholds is not valid. By implementing the thresholds, the legislature provided a more precise standard and excluded *de minimus* injuries from triggering liability. Merely because all of a claimant's preexisting injuries will be considered when computing the amount of compensation does not mean all claimants will receive compensation—there still must be an injury of sufficient seriousness to meet the thresholds before the fund can be liable.

■ This Court finds there must be a single preexisting permanent partial disability that meets the thresholds to trigger the fund's liability and there is no threshold requirement for the last injury. Additionally, all preexisting injuries must be considered in calculating the amount of compensation for which the fund is liable. These holdings must be applied to the fund's claims in each case.

### Witte v. Treasurer

The fund claims the commission erred in considering all of Mr. Witte's preexisting permanent partial disabilities when determining the fund's liability because none of them individually meet the statutory thresholds. The commission found that Mr. Witte suffered from preexisting permanent partial disabilities of 10 percent of the body as a whole, diabetes; 10 percent of the body as a whole, gastrointestinal issues; 10 percent of the body as a whole, psychiatric problems; 5 percent of the body as a whole, lumbar spine; and 10 percent of his right leg. Mr. Witte's body-as-a-whole disabilities due to his diabetes, gastrointestinal issues and psychiatric problems each entitle him to 40 weeks of compensation, while the disability due to his lumbar spine entitles him to 20 weeks.[9]

The fund is only liable when there is a preexisting permanent partial disability that meets either the 50–week threshold for a body as a whole injury or the 15 percent threshold for a major extremity injury. Because none of Mr. Witte's preexisting injuries, when considered alone, meets the thresholds, he is not eligible for compensation from the fund. The commission erred in awarding him compensation.

### Salviccio v. Treasurer

The fund claims the commission erred in considering Mr. Salviccio's preexisting permanent partial disabilities resulting from his hernias and to his little finger when determining the fund's liability because none of the disabilities individually meets the statutory thresholds. The commission determined that Mr. Salviccio had preexisting permanent partial disabilities of 12.5 percent of the body as a whole, referable to diabetes; 4 percent of the body as a whole, referable to the 1999 hernia; 3.5 percent of the body as a whole, referable to the 2005 hernia; and 50 percent of the little finger. Mr. Salviccio's disabilities due to his body as a whole injuries entitle him to the following number of weeks of compensation: 50 weeks for his diabetes; 16 weeks for his 1999 hernia; and 14 weeks for his 2005 hernia. See section 287.290.

Mr. Salviccio's disability due to his diabetes meets the 50–week threshold to trigger the fund's liability.[10] Once the threshold is met, all of Mr. Salviccio's disabilities should be considered in calculating the extent of the fund's liability. While the commission erred in combining all of Mr. Salviccio's injuries to meet the thresholds, it did not err in finding the fund liable or in using all of his injuries in calculating the amount of the award.

### Dyson v. Treasurer

The fund claims the commission erred in considering Mr. Dyson's preexisting permanent partial disability to his right ankle when determining its liability because it does not, by itself, meet the 15 percent threshold required for a major extremity injury. The fund additionally claims the commission erred in considering the ankle

---

9. While section 287.220.1 does not allow converting a major extremity injury to weeks, the legislature provided a method for converting a body as a whole injury to weeks. See section 287.190.3. To determine the number of weeks of compensation for a body as a whole injury, the percentage of permanent partial disability is multiplied by 400 weeks. Id.

10. The court of appeals held that a little finger is not a major extremity and, therefore, a disability to a little finger could not meet the 15 percent major extremity threshold no matter how serious the disability. Because Mr. Salviccio already has an additional disability of sufficient seriousness to meet the thresholds, this Court does not need to consider that issue.

injury because the commission failed to make a finding, and there was no evidence, that the injury constituted a hindrance or obstacle to his employment.

Despite the fund's claim, there was evidence showing Mr. Dyson's ankle injury constituted a hindrance or obstacle to his employment. Mr. Dyson's medical expert, Dr. Volarich, testified that the injury caused "ongoing pain, particularly with prolonged weightbearing [sic] and deep squatting activities." Mr. Dyson testified that his ankle hurt at certain times when he got into his work truck. He also testified that he has to wear boots to work year-round to provide support for his ankle and that he still experiences discomfort. Further, the commission made a finding that the ankle injury constituted a hindrance or obstacle to employment when it expressly credited testimony from Dr. Volarich that both preexisting injuries amounted to a hindrance or obstacle to employment at the time of the last injury. Because the commission expressly found the ankle injury amounted to a hindrance or obstacle to employment and this finding is supported by testimony in the record, the fund's claim that the commission erred in considering the ankle injury because it was not a hindrance or obstacle fails.

As to the fund's claim regarding the statutory thresholds, the commission found that Mr. Dyson had preexisting permanent partial disabilities of 15 percent of the body as a whole, referable to the neck injury and 7.5 percent of his right ankle. The disability due to his neck injury entitles Mr. Dyson to 60 weeks of compensation. *See* section 287.190. While Mr. Dyson's disability to his ankle was insufficient to meet the thresholds, his disability to the body as a whole, referable to his neck, meets the 50–week threshold to trigger the fund's liability. In determining the extent of the fund's liability, all of Mr.

Dyson's disabilities must be considered. While the commission erred in combining both of Mr. Dyson's preexisting permanent partial disabilities to meet the thresholds, it did not err in using both disabilities to calculate the amount of his award.

### Buhlinger v. Treasurer

In Mr. Buhlinger's case, the fund claims the commission erred in combining the permanent partial disabilities from his last injury to meet the thresholds. The commission found Mr. Buhlinger had permanent partial disabilities from his last injury of 27.5 percent of the body as a whole, referable to the neck, 5 percent of the body as a whole, referable to the concussion, and 5 percent of the left elbow. As previously discussed, section 287.220.1 does not impose a numerical threshold for disabilities from the last injury.

Accordingly, the commission did not err in combining the permanent partial disabilities from Mr. Buhlinger's last injury in meeting the thresholds because they did not need to meet the thresholds. The commission found Mr. Buhlinger had a preexisting permanent partial disability of 17.5 percent of his left ankle, meeting the 15 percent major extremity threshold to trigger the fund's liability. The commission properly considered all of his injuries in calculating the amount of his award.

### Conclusion

The commission misapplied section 287.220.1 in combining preexisting permanent partial disabilities to meet the thresholds for triggering the fund's liability. Disabilities from the last injury do not need to meet a certain threshold to trigger the fund's liability, but the statute does require that an individual preexisting permanent partial disability meets the thresholds. Nonetheless, Mr. Salviccio, Mr. Dyson and Mr. Buhlinger each had an

individual preexisting permanent partial disability that met the statutory thresholds to trigger the fund's liability. Therefore, the commission did not err in finding they were entitled to compensation and awarding an amount based on the combined disability of all of their preexisting injuries and the last injury. This Court affirms the commission's awards in those cases. Mr. Witte did not have a preexisting permanent partial disability that met the thresholds and, therefore, the commission erred in awarding any compensation from the fund to him. This court reverses the commission's award in Mr. Witte's case.

RUSSELL, C.J., FISCHER, STITH, DRAPER and TEITELMAN, JJ., concur. WILSON, J., not participating.