

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| TREASURER OF THE STATE OF MISSOURI, CUSTODIAN OF THE SECOND INJURY FUND, | ) ) ) | WD79261 |
| | ) | |
| Appellant, | ) | OPINION FILED: June 7, 2016 |
| | ) | |
| v. | ) | |
| | ) | |
| CARL HORTON, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Labor and Industrial Relations Commission**

Before Division Three: Gary D. Witt, Presiding Judge, James E. Welsh, Judge and
Anthony Rex Gabbert, Judge

The Missouri State Treasurer, as Custodian of the Second Injury Fund (the "Fund"), appeals the final award of the Labor and Industrial Relations Commission ("Commission"), which found that Respondent Carl Horton ("Horton") qualified for fund benefits. In its sole point on appeal, the Fund argues that Horton is not entitled to fund benefits because his preexisting disability, hearing loss, cannot meet the statutory threshold to receive those benefits because hearing loss is not a disability to a major extremity or the body as a whole. We affirm.

## Factual Background

On December 3, 2012, Horton was employed by the Fulton State Hospital when he was assaulted from behind by a patient, knocking him unconscious. Horton was diagnosed with a concussion, post-concussive headaches, and lacerations and abrasions to the head and scalp. Horton thereafter suffered from headaches and sensitivity in his left eye and received physical therapy for shoulder, neck, and head pain. Horton settled his underlying case with his employer for 5% of the body as a whole, referable to the neck, and 12.5% of the body as a whole, referable to the cervical spine.

Horton also suffered, prior to the assault, from preexisting hearing loss in both ears. Horton has used a number of hearing aids to assist with his work but found that they made his environment too distracting and he had difficulty understanding conversations. Horton was evaluated by two doctors who provided him with hearing loss ratings. One doctor rated Horton's hearing loss at 34.75% and the second doctor rated the loss at 70%.

The Administrative Law Judge ("ALJ") found that Horton suffered from a preexisting injury or condition (hearing loss) that was an obstacle to his employment and, when combined with the primary injuries that occurred while he was employed by Fulton State Hospital, created a greater disability than their sum. The ALJ found that Horton "suffered a pre-existing permanent partial disability of 15.5% of the body as a whole, as a result of his bilateral hearing loss." The ALJ found Horton suffered an additional permanent partial disability resulting from the combination of his injuries and awarded him 13.2 weeks of disability to be compensated by the Fund. The Commission found

2

that the ALJ's decision was supported by competent and substantial evidence and complied with the Missouri Workers' Compensation Law. The Fund now appeals the final award of the Commission.

## Standard of Review

Appellate review of a final award made by the Commission is governed by section 287.495.1[1] which states, in relevant part:

> Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

*See also Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013). "An appellate court will defer to the commission on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence. The Court reviews an issue of law *de novo*. An issue of statutory interpretation is a question of law, not fact." *Id.* (internal citations omitted).

---

[1] All statutory citations are to RSMo 2000 as currently updated, unless otherwise noted. See also footnote 2.

**Analysis**

The Fund was created "to encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury." *Id*. The Fund accomplishes this objective by ensuring that an employer will only be responsible for a disability that results from an injury attributable to that employer, and "[a]ny disability attributable to the combination of the work injury with preexisting disabilities is compensated, if at all, by the fund." *Id*.

> Pursuant to section 287.220.1 (RSMo. Supp. 2012),[2] fund liability exists where a
>
> preexisting disability and the combined effect of it and the new injury are each of such seriousness that they are a hindrance or obstacle to employment and "if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability."

*Pierson v. Treasurer of State*, 126 S.W.3d 386, 388-89 (Mo. banc 2004).

The Fund's sole argument on appeal is that Horton is not eligible for fund benefits because loss of hearing is neither an injury to a "major extremity" nor the "body as a whole", as required by section 287.220.1. There is no claim on appeal that hearing loss constitutes an injury to a major extremity and no dispute regarding the percentage of Horton's hearing loss as found by the ALJ. The only question on appeal is whether hearing loss constitutes an injury to the body as a whole.

Resolution of the Fund's claim requires this Court to examine the language of section 287.220.1.

---

[2] In 2013, the General Assembly amended section 287.220 to change eligibility for benefits for injuries occurring after January 1, 2014. Because the injury in this case occurred in 2012, section 287.220.1, RSMo. Supp. 2012 controls. *See Witte*, 414 S.W.3d at 461 n.3; *Gervich v. Condaire, Inc.*, 370 S.W.3d 617, 623 (Mo. banc 2012). Accordingly, any additional citations to sections 287.220 and 287.190 will be to the 2012 cumulative supplement.

"The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *State ex rel. Unnerstall v. Berkemeyer*, 298 S.W.3d 513, 519 (Mo. banc 2009) (quoting *State ex rel. Nixon v. QuikTrip Corp.*, 133 S.W.3d 33, 37 (Mo. banc 2004)). If the language is unambiguous, this Court "must give effect to the legislature's chosen language." *State ex rel. Young v. Wood*, 254 S.W.3d 871, 873 (Mo. banc 2008). Only where the language is ambiguous will the Court resort to other rules of statutory construction. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011). This Court must strictly construe the provisions of the workers' compensation statutes. Section 287.800.

*Witte*, 414 S.W.3d at 461.

The actual statute creating fund liability, as relevant to the requirement that there be a preexisting disability to trigger fund liability, reads as follows:

All cases of permanent disability where there has been ***previous disability*** shall be compensated as herein provided [ . . . ] ***If any employee who has a preexisting permanent partial disability*** whether from compensable injury or otherwise, ***of such seriousness as to constitute a hindrance or obstacle to employment*** or to obtaining reemployment if the employee becomes unemployed***, and the preexisting permanent partial disability, if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability***, according to the medical standards that are used in determining such compensation, receives a subsequent compensable injury resulting in additional permanent partial disability [ . . . . ]

Section 287.220.1 (emphasis added).

First, the statute expressly provides that it applies in "*all cases* of permanent disability where there has been *previous disability*" and divides *disability* into two categories: disability resulting from injuries to a major extremity or injuries to the body as a whole. *Id*. Therefore, according to the plain language of section 287.220.1, any preexisting partial disability must fall into one of these two categories. The preexisting

5

partial disability can result from either a "body as a whole injury" or a "major extremity injury." There are no additional restrictions or qualifiers enumerated in the statute. Neither "major extremity" nor "body as a whole" are defined by statute. Citing its dictionary definitions, "major extremity" has been held to refer to an upper or lower limb, hand, or foot. *See, e.g., Motton v. Outsource Intern.*, 77 S.W.3d 669, 673-74 (Mo. App. E.D. 2002). "Body as a whole," according its usual meaning and as used in context in section 287.220, would mean any other injury to the body that does not qualify as a major extremity. The use of the term "body as a whole" in Section 287.220.1 is used as a catchall term for any injury not limited to a major extremity. This interpretation is in accord with the Missouri Supreme Court's decision in *Pierson*, more fully discussed *infra*, which concluded that injuries to all other parts of the body that do not qualify as a major extremity are injuries to the body as a whole. *See Pierson*, 126 S.W.3d at 389.

Accordingly, the measure of when fund liability is triggered depends on the category into which the preexisting injury falls. If the preexisting disability results from a body as a whole injury, fund liability is triggered where it equals a minimum of fifty weeks of compensation as calculated pursuant to the standards of the Workers Compensation Law. If the preexisting disability is an injury to a major extremity, fund liability is triggered where it equals a minimum of fifteen percent permanent partial disability. *See* Section 287.220.1.

The Fund, however, argues "body as a whole" must be construed more narrowly. The Fund argues that the legislature does not consider hearing loss to be an injury to the "body as a whole" because it is a "member" of the body. The legislature developed and

6

codified in section 287.190 a schedule of losses to "members," which lists weeks of compensation to an employee for the "loss by severance, total loss of use, or proportionate loss of use" of one or more of the listed "members." Loss of hearing is one of the "members" listed in the schedule of losses. *See* Section 287.190.1(27) and (28). "Members" is also not a defined term. The Fund argues that because the legislature has codified in section 287.190 a schedule of losses to "members," an injury to a member, unless it qualifies as a major extremity, cannot constitute an injury to the "body as a whole". Essentially, the Fund asks this Court to infer that because the legislature has referred to hearing loss as a "member" and that an injury to a "member," as that term is normally defined, is not an injury to the "body as a whole," Fund liability cannot be triggered by such an injury.

The Fund made a nearly identical argument before our Supreme Court in *Pierson* that involved the preexisting injury of loss of sight, which was and is also listed as a "member" in section 278.190.1(29). *See Pierson*, 126 S.W.3d at 387. The Missouri Supreme Court squarely rejected the Fund's identical argument in *Pierson* that, because vision loss is listed as a "member" in the schedule of losses, it cannot constitute injury to the body as a whole and, therefore, cannot trigger Fund liability. *Id.* at 389. While this would seem to conclusively resolve the issue before us, the Fund argues a subsequent change in the construction of the Workers' Compensation Law demands a different result.

The Fund argues that when *Pierson* was decided, the legislature had instructed that that the Workers Compensation Law was to be liberally construed with a view to the public welfare and substantial compliance with the statutes was sufficient to support the

7

Commission's award. *Id.* at 387-88. In 2005, after *Pierson* was decided, the legislature amended the law, such that tribunals must now *strictly* construe the Workers' Compensation Law. *See* Section 287.800. This difference, according to the Fund, requires that this Court find, contrary to *Pierson*, that injury to a "member" listed in the schedule of losses, unless it qualifies as a major extremity, cannot be the preexisting disability upon which fund liability is predicated.

In rejecting the Fund's argument in *Pierson*, the Supreme Court found that the Fund had failed to either cite case law or a definition of "body as a whole" supporting its position that an injury to a "member" listed in the schedule of losses cannot constitute an injury to the body as a whole. 126 S.W.3d at 389. The Fund, in support of its argument here on appeal, does not cite any statutory definition of "member" or "body as whole" (as there are none) but cites to the dictionary definitions of the terms. The Fund concludes that the definition of "member" in the statute is "a bodily part or organ." "Whole," on the other hand, is defined as "having all its proper parts or components: lacking nothing that belongs to it: diminished or reduced in no way: entire." This, the argument goes, means that a member is merely a part of the whole, and when the statute refers to "the body as a whole," it is not referring merely to a member.

The Fund, however, again fails to convincingly articulate how or exactly why this Court must conclude that a member is not part of the body as a whole for the purpose of triggering Fund liability. As stated by our Supreme Court, "section 287.190 does not use the term 'body as a whole' at all, nor say that 'members' are not parts of the body as a whole." *Id.* The Fund argues that because the schedule of losses caps the complete loss

8

of hearing in both ears at 180 weeks, then that must mean the member cannot be considered part of the body as a whole because compensation for injuries to the body as a whole is capped at four hundred weeks. The actual language of the statute provides that

> [f]or permanent injuries other than those specified in the schedule of losses, the compensation shall be paid for such periods as are proportionate to the relation which the other injury bears to the injuries above specified, but no period shall exceed four hundred weeks, at the rates fixed in subsection 1.

Section 287.190.3. That there is a cap of four hundred weeks for any injury not listed in the schedule of losses has no clear or obvious relation to whether those injuries are injuries to the "body as a whole" as the term is used in section 287.220. That the legislature has found it appropriate to create different caps on specified injuries has no bearing on whether those injuries qualify as injuries to the body as a whole so as to trigger Fund liability.

Our Supreme Court recognized in *Pierson* that injuries to all the other "members" of the body listed in section 287.190, other than injury to the ears and eyes, are compensable as injuries to "major extremities," which would leave hearing and vision loss treated as a *sui generis* category of injuries. *See Pierson*, 126 S.W.3d at 389. To accept the Fund's position would require a holding that "the legislature has chosen to make all injuries except those to the eyes and ears compensable by the fund when they combine synergistically with a later injury." *Id*. Again, there is no logical reason why the legislature would have chosen to disallow Fund compensation for only these two types of injuries. In the absence of any indication in the statutes that the legislature intended to create such a strange outcome and there being no logical reason to believe

9

such a result was intended, we refuse to read into the statute the limitation urged by the Fund.[3]

The construction of the statutes sought by the Fund is not strict construction, as the Fund asks us to read into the statute a disqualification to Fund liability that is not present.[4] All that section 287.220.1 requires in order to trigger fund liability is that the individual (1) have a preexisting permanent partial disability "of such seriousness to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed" and (2) if the preexisting disability is the result of an injury to the body as a whole (i.e. not an injury to a major extremity) equals a minimum of fifty weeks of compensation. The Commission did not err in finding that hearing loss constitutes an injury to the "body as a whole" to trigger fund liability.

The point is denied.

### Conclusion

The Commission's decision is affirmed.

_____
Gary D. Witt, Judge

All concur

---

[3] Although not determinative, we also note that the legislature's amendments to the Workers' Compensation Law in 2005, after *Pierson* was decided, which among other things changed the construction of those laws from a liberal construction to strict construction, left unchanged the material provisions of sections 287.190 and 287.220.1. The legislature did expressly abrogate certain judicial decisions through its amendments, see current section 287.020.10, but not *Pierson*. Had the legislature intended to change the result in *Pierson*, it could have done so by expressly stating it or by defining "member" and "body as whole" to reach the result urged by the Fund. We reject the Fund's contention that the legislature attempted to silently or passively abrogate *Pierson* by changing the construction of the statutes from a liberal to strict construction. The plain meaning of the statutory language of section 287.220 clearly includes hearing loss as an injury to the body as a whole and a preexisting liability upon which Fund liability can be founded.

[4] Strict construction does not mean that the statute should be "construed in a narrow or stingy manner," but rather "confines the operation of the statute to matters affirmatively pointed out by its terms, and to cases which fall fairly within its letter." *Allcorn v. Tap Enters., In*c., 277 S.W.3d 823, 828 (Mo. App. S.D. 2009).