

# Missouri Court of Appeals

## Southern District

### Division One

JAMES D. CHAMBERS, )
)
Appellant, )
) No. SD37036
vs. )
) **Filed: November 23, 2021**
TREASURER OF MISSOURI AS )
CUSTODIAN OF THE )
SECOND INJURY FUND, )
)
Respondent. )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**<u>AFFIRMED</u>**

James Chambers pursued permanent total disability benefits from the Second Injury Fund while working nine-hour days, seven days a week for five and a half months of the year. Chambers claims the Commission erred in concluding he is employable in the open labor market and that he is not permanently and totally disabled. We affirm.

**Background**

After Chambers stopped attending high school, he worked as a physical laborer and later as a commercial truck and bus driver. During this time he had two surgeries on his spine and ongoing back pain, for which he was prescribed medication. In 2009, the administrative law judge ("ALJ") approved stipulations for compromise settlement

entered by Chambers, his then-employer, and the Second Injury Fund ("Fund") for permanent partial disability of the body as a whole.  In January 2008, Chambers was released to work without restrictions but with a recommendation that he pursue sedentary work rather than manual labor.

In 2009, when he was about 40 years old, Chambers began working part-time, seasonally, for a company that operates a campground and provides river float trips (hereinafter the "campground and river outfitter").  His duties included shuttling customers upriver by bus and lifting and carrying canoes.  Three years later, Chambers began working full-time for this company as a campground manager for five and a half months of the year.  He worked nine-hour days, seven days a week.  His duties included occasional shuttling and lifting as before, plus supervision of employees, operation of a tractor and a backhoe, and repair of electrical boxes low to the ground.

During the off-season, Chambers drew unemployment benefits.  Each year in the spring he was rehired and resumed full-time work.

In addition to his work for the campground and river outfitter, Chambers also worked as a school bus driver from 2012 until 2014, then as a maintenance person for the City of Galena ("City") from 2014 until 2016.  His maintenance duties included activities such as lawnmowing, weed-eating, patching roads, salting roads in the winter, installing road signs, and installing and replacing utility meters.

In November 2015, Chambers was working for the City when the truck he was driving lurched and rolled into a ditch, coming to rest on its top.  Chambers strained muscles in his neck and upper back.  Medication was prescribed to ease his pain. Chambers participated in several sessions of physical therapy.

In April 2016, Chambers told his treating physician that physical therapy was not helping and he was in constant pain, which was aggravated by activity. The doctor noted a discrepancy between Chambers' subjective pain complaints and surveillance video showing him driving, bending, shoveling, and lifting a barrel into the back of a truck without difficulty. Chambers was found to have achieved maximum medical improvement and was cleared to work subject to a 40-pound lifting restriction due to his previous back surgery.

Chambers filed a claim for workers' compensation benefits. He entered into a stipulation for compromise settlement with the City and pursued a claim against the Fund for permanent total disability benefits.

At the administrative hearing in February 2020, Chambers affirmed that even after the 2015 accident he had continued to work for the City and he had continued to work for five-and-a-half months of each year with the campground and river outfitter. He expected to work full-time for the campground and river outfitter again from mid-April through September of 2020. A vocational expert testified Chambers was gainfully employed in the open labor market and that he would be able to compete for and perform sedentary or light-level work even with a 40-pound lifting restriction.

The ALJ found Chambers was not permanently and totally disabled. His work after the 2015 accident was regular and, at times, more than full-time. Although he received accommodations at his job with the campground and river outfitter, that employer made it clear that Chambers' employment was a job, not a favor. The ALJ found no Fund liability because Chambers was not permanently and totally disabled and there is no provision for payment of permanent partial disability under § 287.220 RSMo (2016) for

cases arising after January 1, 2014. A majority of the Commission affirmed and adopted the ALJ's award of no compensation.

**Legal Principles**

We review all final decisions, findings, and orders of the Commission to determine whether they are supported by competent and substantial evidence upon the whole record. ***Annayeva v. SAB of TSD of City of St. Louis***, 597 S.W.3d 196, 198 (Mo. banc 2020). When the Commission adopts the findings of the ALJ, as here, we review those findings as if originally made by the Commission. ***Id.*** at 198 n.2. In the absence of fraud, we defer to the Commission's findings of fact, witness credibility determinations, and weighing of conflicting evidence. ***Id.*** at 198.

The Fund was created by statute in 1943. ***Treasurer of State-Custodian of Second Injury Fund v. Witte***, 414 S.W.3d 455, 460 (Mo. banc 2013) (superseded by subsequent statutory amendments in other respects). "The purpose of the fund is 'to encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury.'" ***Id.*** (quoting ***Pierson v. Treasurer of State,*** 126 S.W.3d 386, 389–90 (Mo. banc 2004)). "Any disability attributable to the combination of the work injury with preexisting disabilities is compensated, if at all, by the fund." ***Id.*** (citing § 287.220.1 RSMo Cum. Supp. (2012)). "In summary, 'the Second Injury Fund compensates workers who are permanently and totally disabled by a combination of past disabilities and a primary work injury.'" ***Atchison v. Missouri State Treasurer***, 603 S.W.3d 719, 722 (Mo.App. 2020) (quoting ***Payne v. Treasurer of State, Custodian of Second Injury Fund***, 417 S.W.3d 834, 847 (Mo.App. 2014)).

4

"The term 'total disability' . . . shall mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." Section 287.020.6 RSMo (2000). "'The determination of whether a claimant is permanently and totally disabled is based upon the claimant's ability to compete in the open labor market.'" *Atchison*, 603 S.W.3d at 724 (quoting *Lewis v. Treasurer of State*, 435 S.W.3d 144, 159 (Mo.App. 2014)); *Brashers v. Treasurer of State as Custodian of Second Injury Fund*, 442 S.W.3d 152, 155 (Mo.App. 2014)). "'The primary determination is whether an employer can reasonably be expected to hire the employee, given his or her present physical condition, and reasonably expect that employee to successfully perform the work.'" *Id.* (quoting *Lewis*, 435 S.W.3d at 159). The extent of a claimant's disability is a fact issue within the special province of the Commission. *Jefferson City Country Club v. Pace*, 500 S.W.3d 305, 323 (Mo.App. 2016).

"[Chambers], as the workers' compensation claimant, bears the burden of proof to show that [his] injury was compensable in workers' compensation." *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 509 (Mo. banc 2012). "[Chambers'] overall burden of proof is made up of two separate burdens, the burden of persuasion and the burden of production." *Annayeva*, 597 S.W.3d at 200 n.8. The Commission is free to believe or disbelieve any evidence, and it is irrelevant that there is evidence supportive of a contrary finding. *Guinn v. Treasurer of State*, 600 S.W.3d 874, 881 (Mo.App. 2020). Thus, to satisfy the burden of persuasion, Chambers had to convince the Commission to view the facts in a way that favored him. *Annayeva*, 597 S.W.3d at 200 n.8.

5

A claim is not presumed to be valid even if a claimant satisfies the burden of production. ***Guinn***, 600 S.W.3d at 879-80. The Fund has no burden of production or persuasion it must satisfy to defeat the claim. ***Id.*** Because of the parties' differing burdens, "[o]nly factual findings that are necessary to make an award for the employee must be supported by competent and substantial evidence on the whole record." ***Annayeva***, 597 S.W.3d at 200 n.8. The net result of these legal principles is that "a section 287.495.1(4) challenge that the denial of a claim is erroneous because it is not supported by competent and substantial evidence on the whole record makes no logical sense." ***Guinn***, 600 S.W.3d at 880.

## Discussion

As an initial matter, we observe that two of Chambers' three points relied on are § 287.495.1(4) RSMo challenges to sufficiency of the evidence supporting findings on which he bore the burdens of production and persuasion. Even if we assume, without deciding, that he satisfied the burden of production, he did not ultimately persuade the Commission he was totally and permanently disabled. As in ***Guinn***, Appellant's 287.495.1(4) challenges asserting that the denial of his claim is erroneous because it is not supported by competent and substantial evidence on the whole record "make no logical sense" and, for this reason alone, should be denied without any further discussion. ***Id.***

Even if his points were cognizable on appeal, none of the three is meritorious. He first faults the Commission for considering his employment by the campground and river outfitter to be gainful or reasonable employment, citing ***Molder v. Missouri State Treasurer***, 342 S.W.3d 406, 407 (Mo.App. 2011). In ***Molder***, our Western District applied a legal principle that Chambers would have us ignore: affirmance of and

6

deference to the Commission's findings on permanent total disability even though the evidence may have supported a different result. In this case, the Commission expressly considered and rejected the application of *Molder* because Chambers' work for the campground and river outfitter was regular rather than irregular, full-time rather than part-time or sporadic, and involved a variety of physical and supervisory duties the employer expected to be performed as opposed to highly-accommodated light duties secured through an employer's benevolence.

Chambers next contends the Fund's vocational expert, whom the Commission found to be more credible than Chambers' vocational expert, based his opinion on work restrictions that did not consider all of Chambers' prior injuries. "[T]he question of whether a claimant is totally and permanently disabled is not exclusively a medical question and the Commission need not rely exclusively on the testimony of medical experts; rather, it may consider all the evidence and the reasonable inferences drawn from that evidence." *Pace*, 500 S.W.3d at 322 (internal punctuation omitted). In this case the parties presented conflicting medical and vocational evidence. The Commission can, and did, consider the expert medical opinions along with other relevant evidence to arrive at its conclusion as to the extent of Chambers' disability.

Chambers also argues he is not able to compete on the open labor market in that the Commission found he must lie down periodically throughout the work day, yet "the only credible vocational evidence on the record was that if Chambers must lie down during the workday, then Chambers would not be able to compete on the open labor market." These findings are not necessarily contradictory or mutually exclusive. The Commission could and did find Chambers has to lie down periodically, but it also found, based on credible evidence, that Chambers exceeded the work restrictions imposed by his

7

medical expert, that he exaggerated the degree of physical complaints from his last injury, that he had been employed full-time at times after the 2015 accident, and that he had represented he was ready, willing, and able to work when applying for unemployment benefits during off-season unemployment. All of these factors were considered and weighed in the Commission's ultimate conclusion that Chambers was employable.

It was Chambers' burden to prove he was permanently and totally disabled due to inability to compete in the open labor market. He did not satisfy this burden. There was abundant evidence Chambers *was* able to compete in the open labor market, e.g., the campground and river outfitter rehired Chambers to work full-time in each of the four years after the 2015 accident and Chambers expected he would be rehired to that same position again in 2020. We deny his points relied on and affirm the Commission's award of no compensation.

JACK A. L. GOODMAN, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., P.J. – CONCURS

JEFFERY W. BATES, J. – CONCURS