**Fred HOVEN, Appellant,**

v.

**TREASURER OF the STATE of Missouri, CUSTODIAN OF the SECOND INJURY FUND, Respondent.**

**No. ED 98842.**

Missouri Court of Appeals, Eastern District, Division One.

Nov. 26, 2013.

Dean Lee Christianson, St. Louis, MO, for appellant.

Chris Koster, Da–Niel Cunningham, Jefferson City, MO, for respondent.

CLIFFORD H. AHRENS, Presiding Judge.

Fred Hoven ("Claimant") appeals the awards of the Labor and Industrial Relations Commission ("Commission") finding the Second Injury Fund ("SIF") not liable for permanent partial disability ("PPD") benefits based on his December 2004 injury. The SIF cross-appeals the award of the Commission granting PPD benefits to Claimant based on his September 2007 injury. We affirm.

The parties are familiar with the facts of the case; therefore we discuss the facts below only as needed to address the issues on appeal.

Our standard of review is set forth in section 287.495.1 RSMo 2000.[1] An appellate court shall only review questions of law and may modify, reverse, remand or set aside an award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award. *Id.* In the absence of fraud, the findings of fact made by the Commission within its powers shall be conclusive and binding. *Id.*

It is the claimant's burden in a worker's compensation proceeding to prove all of the elements of his claim to a reasonable probability. *Dunn v. Treasurer of Missouri as Custodian of Second Injury Fund,* 272 S.W.3d 267, 272 (Mo.App.2008). To recover against the SIF, a claimant must prove that he incurred a compensable injury that resulted in PPD. Section 287.220.1. A claimant must also establish that he had a pre-existing PPD, whether from a compensable injury or not, that: existed when the last injury was sustained; was of such severity as to constitute a hindrance or obstacle to employment or re-employment should he become unemployed; and equals a minimum of 50 weeks of compensation for injuries to the body as whole or fifteen percent for major extremities. *Id.; Dunn,* 272 S.W.3d at 272. In addition, the claimant must establish that the present compensable injury, coupled with pre-existing PPD, causes greater total disability than the sum of the disabilities viewed independently. *Elrod v. Treasurer of Missouri as Custodian of the Second Injury Fund,* 138 S.W.3d 714, 717 (Mo. banc 2004). The level of permanent disability associated with an injury cannot be determined until it reaches the point of maximum medical improvement ("MMI"). *Cardwell v. Treasurer of Missouri as Custodian of the Second Injury Fund,* 249 S.W.3d 902, 910 (Mo.App.2008). The issue of whether further medical improvement can be reached is essential to determine when a disability becomes permanent, and accordingly, when payments for PPD should be calculated. *Id.*

We do not view the evidence in the light most favorable to the Commission's award. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003). We examine the entire record and determine whether there is competent and substantial evidence to support the award. *Id.* at 222–23. "[W]e defer to the Commission on issues concerning credibility and the weight to be given conflicting evidence." *Hughey v. Chrysler Corp.,* 34 S.W.3d 845, 846 (Mo.App.2000). However, this Court reviews questions of law independently, and is not bound by the Commission's conclusions of law or its application of the law to the facts. *Grubbs v. Treasurer of*

1. All further statutory citations are to RSMo 2000 unless noted otherwise.

*Missouri as Custodian of Second Injury Fund,* 298 S.W.3d 907, 910 (Mo.App.2009).

■ In his first point relied on, Claimant contends that the Commission erred in reversing the award of the Administrative Law Judge ("ALJ"), and concluding that the SIF is not liable for PPD benefits to him based on the December 2004 injury because the facts found by the Commission, coupled with the conclusive presumption of section 287.190.6, proved that Claimant's injuries were at maximum medical improvement ("MMI") and produced a PPD. Claimant asserts that he proved, factually and legally, that his injuries produced the required PPD needed to create SIF liability.

Claimant argues that the Commission improperly denied his claim because it incorrectly found that he had not reached MMI regarding his December 2004 injury. The Commission found Dr. Mark Lichtenfeld's testimony to be credible. Dr. Lichtenfeld did state that Claimant had varying degrees of PPD relative to the December 2004 injury and the September 2007 injury. However, he also testified that he did not believe that Claimant had reached MMI, and that he might benefit from further treatment, including possibly more surgery. The Commission also found that the treatment notes of Dr. Bruce Schlafly, who performed carpal tunnel surgeries on both of Claimant's wrists in 2009, indicated that he might need further evaluation and surgery, and hence, had not reached MMI. The Commission found that Claimant's testimony was at best, inconclusive regarding future treatment, and that it could not discern any basis in his testimony that his medical condition relative to the December 2004 injury was permanent.

Regarding SIF liability, the Commission concluded that based on Dr. Lichtenfeld's "uncontested testimony" that Claimant was not at MMI for the December 2004 injury, and accordingly, that it could not determine the nature or extent of the PPD resulting from that injury. Specifically, it concluded that the "essential" issue of whether further medical progress could be made was not resolved by the Claimant's proof, stating:

> The only doctor to testify opined that [Claimant] is not at [MMI] and that he would benefit from further evaluation. The notes from Dr. Schlafly and [Claimant]'s own testimony support the proposition that [Claimant] remains in need of further treatment for the primary injuries. [Claimant] did not testify as to whether he intends further significant treatment and his only mention of surgery is inconclusive.
>
> Simply put, we don't know whether [Claimant]'s medical condition or any disability referable to the primary injury are permanent. As a result, any determination of [PPD] referable to the primary injury would necessarily hinge upon surmise and speculation. . . .

Claimant avers that the Commission erred because the facts that it found "actually rebut" the opinion of Dr. Lichtenfeld, and establish that his disability was permanent, at least as of the date of trial. We disagree.

Dr. Lichtenfeld expressly stated that Claimant had not reached MMI. While it is true that Dr. R. Evan Crandell had issued an opinion letter on November 21, 2007, that Claimant was at MMI regarding the 2004 injury and had a PPD of 5% of the right upper extremity at wrist level, Claimant had two subsequent surgeries in 2009 by Dr. Schlafly, rendering Dr. Crandall's opinion in November 2007 moot. Claimant relies heavily on the Stipulation for Compromise Settlement between Employee and Employer/Insurer ("2004 Settlement") for the 2004 Injury, which set-

tled Claimant's claim against his employer, Sachs Electric. We note initially that the 2004 Settlement does not appear to have been entered into evidence before the ALJ that entered the award favorable to Claimant, as the transcript does not reflect that it was offered into evidence or that the ALJ took notice of the Commission records that included that document. The legal file compiled by the Commission in this case does include the 2004 Settlement, along with a certification attesting that the documents attached as part of the legal file "constitute the true and complete record reviewed by the Commission in this matter[.]"

■ Assuming *arguendo* that the 2004 Settlement was properly before the Commission and that it was reviewed along with all of the other evidence, this still does not rebut Dr. Lichtenfeld's testimony. Section 287.190.6(1) provides that

> "Permanent partial disability" means a disability that is permanent in nature and partial in degree, and when payment therefor has been made in accordance with a settlement approved either by an administrative law judge or by the labor and industrial relations commission, a rating established by medical finding, certified by a physician, and approved by an administrative law judge or legal advisor, or an award by an administrative law judge or the commission, the percentage of disability shall be conclusively presumed to continue undiminished whenever a subsequent injury to the same member or same part of the body also results in permanent partial disability for which compensation under this chapter may be due; provided, however, the presumption shall apply only to compensable injuries which may occur after August 29, 1959.

However, the conclusive presumption referred to in this subsection is not binding on the SIF. The SIF is not bound by the terms of settlement agreements to which it is not a party. *Seifner v. Treasurer–Custodian of Second Injury Fund,* 362 S.W.3d 59, 64–66 (Mo.App.2012); *Totten v. Treasurer of the State of Missouri,* 116 S.W.3d 624, 628–29 (Mo.App.2003). Nor is the SIF collaterally estopped by a settlement agreement to which it is not a party. *Seifner,* 362 S.W.3d at 65–66. The conclusive presumption of section 287.190.6(1) that the percentage of disability continues undiminished relative to subsequent injuries to the same body part is not applicable to the SIF. At most, the 2004 Settlement is evidence that the Commission may consider. *See Conley v. Treasurer of Missouri,* 999 S.W.2d 269 (Mo.App.1999). The Commission determined Dr. Lichtenfeld's testimony to be credible and implicitly found that it carried more weight than a voluntary settlement agreement. Claimant also argues that Dr. Lichtenfeld also testified that Claimant had permanent partial disabilities and what the percentages of PPD were. This is not inconsistent with his testimony that Claimant was not at MMI, but rather may represent his belief that Claimant was at particular levels of disability that would be permanent, absent further treatment. The Commission's award is supported by competent, substantial evidence. Point denied.

In his second point relied on Claimant asserts that the Commission erred in finding that he was not entitled to an award of benefits against the SIF based on its finding that he did not prove that his 2004 injuries caused PPD as of the September 2007 injury. Claimant argues that the facts found by the Commission do not support the award in that the evidence proves that he was factually permanently disabled at that time, and in that the evidence legally established permanent disability through the manner in which his condi-

tions constituted a hindrance or obstacle to his employability at the time.

■■■ The SIF concedes that Claimant suffered an injury to his left knee in September 2007 that resulted in a PPD of 28.75 percent of the left knee, but argues that the dispute regarding the 2007 claim is over what pre-existing disabilities were to be combined for the purpose of SIF liability, including the statutory thresholds. SIF avers that because Claimant was not at MMI for the December 2004 injury, the Commission properly excluded the 2004 injury in calculating SIF liability for the 2007 injury. We agree. In order to calculate SIF liability, the Commission has to determine what percent of the disability can be attributed solely to the pre-existing condition at the time of the last injury. *Gassen v. Lienbengood,* 134 S.W.3d 75, 80 (Mo.App.2004); *see also* section 287.220.1. Having found that Claimant failed to establish that he was at MMI for the December 2004 injury, the Commission could not determine what percentages of PPD were from the December 2004 injury, and accordingly could not apply it to the 2007 claim. Point denied.

SIF raises two points in its cross-appeal. In its first point relied on SIF contends that the Commission erred in including Claimant's pre-existing PPD of 10 percent hearing loss, 5 percent tinnitus, 2.5 percent of the low back, and 5 percent of the left shoulder in calculating the liability of the SIF because those injuries do not meet the thresholds set in section 287.220.1, which requires that a disability to the body as a whole be at least 50 weeks, and a disability to a major extremity be least 15 percent to qualify for SIF liability.

■■ The Missouri Supreme Court recently addressed this issue in an opinion ruling on four consolidated cases involving SIF liability in *Buhlinger v. Treasurer of State,* SC92867, 414 S.W.3d 455, 2013 WL 5989277 (Mo. banc Nov. 12, 2013). In that opinion the Missouri Supreme Court held that the Commission cannot combine several lesser injuries to meet the thresholds of section 287.220.1 to trigger SIF liability. However,

> Once the [SIF]'s liability has been triggered by meeting the [threshold] requirements in the third sentence of section 287.220.1, the fourth sentence provides the mechanics for determining the amount of compensation for with the [SIF] is liable. The [SIF] is liable only for the degree of the combined disability that exceeds the numerical sum of the preexisting disabilities and the disability from the last injury. The plain and ordinary meaning of the statute's language expressly requires the ALJ to consider "all" preexisting injuries or conditions—without the threshold limitation—in calculating the amount of compensation for which the [SIF] is liable.

*Id.* In the present claim related to the September 2007 injury, the Commission converted Claimant's pre-existing disabilities into weeks of compensation, and came up with the following results: 40 weeks for the right knee, 40 weeks for hearing loss, 20 weeks for tinnitus, 60 weeks for vertigo, 50 weeks for the hernia, 10 weeks for the low back, and 11.6 weeks for the left shoulder, totaling 231.6 weeks. The 60 weeks for vertigo and the 50 weeks for Claimant's hernia each separately met the threshold requirement of section 287.220.1, which is a minimum of 50 weeks of compensation for a PPD of a body as the whole injury or fifteen percent PPD of a major extremity, to trigger SIF liability. At that point it became necessary to follow the statutory method for determining the amount of compensation for which SIF was liable. Section 287.220.1 requires that the PPD from all pre-existing injuries or

conditions be considered, regardless of whether the PPD for each separate injury or condition was above or below the threshold level. *See id.*

The Commission found Dr. Lichtenfeld to be credible, and found that Claimant's pre-existing conditions combined with his primary injury to result in a greater disability than the basic sum, and agreed with the ALJ that a 15 percent "load" factor accurately represented the synergistic effect of the injuries. The Commission properly added the 231.6 weeks of PPD from pre-existing conditions to the 46 weeks of PPD of the left knee (based on 28.75 percent PPD of the knee) for a total 277.6 weeks, which it multiplied by the 15 percent "load" factor, resulting in 41.64 weeks of PPD benefits for which the SIF is liable. The stipulated rate of compensation is $389.04 per week. The Commission properly awarded Claimant the sum of $16,199.63 ($389.04 multiplied by 41.64 weeks) in PPD benefits for which SIF is liable. Point denied

SIF avers in its second point relied on in its cross-appeal that the Commission erred in awarding benefits to Claimant because there was no evidence that the disabilities that it considered in its determination of SIF liability were a hindrance or obstacle to Claimant's employment or re-employment in that the statute requires a finding of an actual and measurable disability when the work injury is sustained to create SIF liability.

SIF argues that the Commission made no finding that Claimant's disabilities were a hindrance or obstacle to his employment or to his re-employment, and accordingly it failed to find that Claimant met the prerequisite for SIF liability. We disagree. In its award allowing compensation to Claimant, the Commission concluded, when applying the "potential to combine" standard, that:

[Claimant]'s preexisting hearing loss, tinnitus, vertigo, hernia, low back, and left shoulder conditions amount to hindrances or obstacles to employment at the time he sustained the primary injury. This is because we are convinced a cautious employer could reasonably perceive each of these conditions as having the potential to combine with a subsequent work related injury so as to produce a greater degree of disability than would occur in the absence of such condition

It is difficult to see how the foregoing is not a finding that Claimant's disabilities were a hindrance or obstacle to finding re-employment. SIF also argues that there is no evidence that there was an actual and measurable disability at the time of the work injury. We observe that Dr. Lichtenfeld, whom the Commission found to be credible, testified that:

Due to the patient's preexisting conditions at the time of this injury, [Claimant] has the following disabilities: Number 1, [Claimant] has a 32 1/2 percent [PPD] at the level of the right knee. Number 2, [Claimant] has a 15 percent [PPD] of the person as a whole due to his vertigo. Number three, [Claimant] has a 15 percent [PPD] of the person as a whole due to his tinnitus in the left ear. Number 4, [Claimant] has a minimal amount of disability due to his prior lumbosacral spine complaints, as it appears that most of his complaints began after his two work injuries. Number 5, due to the patient's left herniorrhaphy, [Claimant] has a 12 1/2 percent [PPD] of the person as a whole.

Dr. Lichetnfeld's report, which was admitted into evidence, also stated that Claimant had a PPD of 27 1/2 percent regarding the left shoulder. There was competent and substantial evidence to support the Commission's award. Point denied.

 

The awards of the Commission are affirmed.

SHERRI B. SULLIVAN, J., concurs.

GLENN A. NORTON, J., concurs.