

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| LAWRENCE MILLER, | ) | No. ED100308 |
| | ) | |
| Respondent, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| vs. | ) | |
| | ) | |
| TREASURER, STATE OF MISSOURI, | ) | |
| AS CUSTODIAN OF THE | ) | |
| SECOND INJURY FUND | ) | FILED:  March 25, 2014 |
| | ) | |
| Appellant. | ) | |

## OPINION

The Missouri State Treasurer, as Custodian of the Second Injury Fund, appeals the award of the Labor and Industrial Relations Commission in favor of Lawrence Miller. The Treasurer asserts that Miller's pre-existing injury should not have been factored into the calculation of Fund liability because it hadn't reached maximum medical improvement at the time of the primary injury.  We reverse and vacate the Commission's award and enter a modified award pursuant to our authority under Rule 84.14.

### Background

Mr. Miller had worked assembling aircraft for Boeing since 1987.  Three injuries are relevant to his present claim against the Fund.  In August 2006, Miller injured his cervical spine while installing a 300-pound windshield on an F-18. Conservative treatments provided little relief, so, in February and June 2007, Miller underwent MRIs

that revealed disc degeneration and protrusion (later identified as herniation) at C5-6. Miller was referred for a surgical consultation but elected not to undergo surgery at that time. Instead, he received physical therapy and continued working without restrictions but had some difficulty maneuvering in tight spaces. In August 2007, Miller was in a motorcycle accident that resulted in multiple injuries and left chronic pain in his thoracic and lumbar spine. In September 2007, he fell through loose platform slats into a cockpit and tore the anterior cruciate ligament (ACL) in his right knee, the primary injury here.

The chronology of Miller's subsequent treatment is central to the Treasurer's appeal. In March 2008, Miller finally underwent surgery for his 2006 neck injury, receiving a discectomy and fusion at C5-6. His doctor determined that Miller's neck had reached maximum medical improvement (MMI) in July 2008. Miller settled his disability claim with Boeing regarding this injury for 27.5% PPD of the body as a whole referable to the neck. In December 2008, Miller underwent ACL reconstruction surgery on his right knee. His treating doctor for that injury found Miller to be at MMI as of March 2009. Miller settled this claim with Boeing for 35% PPD of the right knee.

Miller then sought further compensation from the Fund. An administrative law judge determined that Miller's 2006 neck injury and 2007 back injury both constituted pre-existing permanent partial disabilities (PPD) on the date of Miller's primary knee injury for purposes of calculating Fund liability. A majority of the Commission affirmed the award. One commissioner dissented in a separate opinion articulating the analysis now asserted by the Treasurer on appeal: that Miller's 2006 neck injury was not a pre-existing PPD for purposes of Fund liability because it hadn't yet reached MMI when the primary knee injury occurred.

**Standard of Review**

Our standard of review is set forth in section 287.495.1 RSMo 2000. An appellate court shall only review questions of law and may modify, reverse, remand or set aside an award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award. Id. In the absence of fraud, the findings of fact made by the Commission within its powers shall be conclusive and binding. Id. This court will uphold the Commission's award if it is supported by competent and substantial evidence on the whole record. APAC Kansas, Inc. v. Smith, 227 S.W.3d 1, 3 (Mo. App. 2007). We defer to the Commission on issues concerning credibility and the weight to be given conflicting evidence. Id.

However, this Court reviews questions of law independently and is not bound by the Commission's conclusions of law or its application of the law to the facts. Grubbs v. Treasurer of Missouri as Custodian of Second Injury Fund, 298 S.W.3d 907, 910 (Mo. App. 2009). The facts are not in dispute. The Treasurer alleges misapplication of the law, so our review is *de novo*.

**Discussion**

A claimant's entitlement to disability compensation from the Fund is governed by §287.220.2 RSMo. Sparing the reader a full recitation, as pertinent here, a claimant must prove that: (1) he incurred a compensable injury that resulted in PPD; (2) he had a pre-existing PPD (whether compensable or not) that was severe enough to hinder employment and meet statutory thresholds for equivalent weeks of pay; and (3) the

combination of the primary and pre-existing injuries yields a total disability greater than the sum of the parts. Hoven v. Treasurer of State, Custodian of Second Injury Fund, 414 S.W.3d 676, 678 (Mo. App. E.D. 2013) (paraphrasing key elements of §287.220.2). "'Permanent partial disability' means a disability that is permanent in nature and partial in degree." §287.190.6(1). Importantly, the "level of permanent disability associated with an injury cannot be determined until it reaches the point of maximum medical improvement." Hoven at 678, citing Cardwell v. Treasurer of State of Missouri, 249 S.W.3d 902, 910 (Mo. App. E.D. 2008). Although the term maximum medical improvement doesn't appear in the statute, the issue of whether any future medical progress can be reached is essential in determining when a disability becomes permanent and thus when payments can be calculated. Cardwell at 910.

Notwithstanding the foregoing pronouncements, Miller contends that his neck injury was a pre-existing PPD before the knee injury occurred because it was already a permanent condition that hindered his job performance. On one hand, Miller avers generally that the permanence of an injury doesn't necessarily preclude the possibility of further decline and corresponding treatment; on the other hand, he points out that this particular record lacks any evidence that his neck condition further deteriorated after the knee injury, only that he changed his mind about the surgical option. While Miller's factual statements may be correct in lay terms, his legal interpretation of §287.220.2 doesn't comport with Missouri precedent and perfectly illustrates the hazard of a nebulous standard. The relevant case law supplies a clear standard, MMI, which, applied to the undisputed facts here, compels reversal of the Commission's award.[1] The record

---

[1] Miller acknowledges Cardwell's edict that "one cannot determine the level of permanent disability associated with an injury until it reaches a point where it will no longer improve with

4

establishes that Mr. Miller did not reach MMI for his 2006 neck injury until after his surgery in 2008, months after his primary knee injury in 2007. As such, his neck injury could not be considered a permanent partial disability for purposes of calculating Fund liability. Point granted.

## Conclusion

The Commission's award is reversed and vacated. At the Treasurer's request and in furtherance of judicial economy, we invoke our authority under Rule 84.14 and enter a modified award of $6,769.30.

_____
CLIFFORD H. AHRENS, Judge

Roy L. Richter, P.J., concurs.
Glenn A. Norton, J., concurs.

---

medical treatment" (Cardwell at 910) yet he implies without explanation that this court is free to ignore its prior holding. Regarding this court's precedent in Hoven, Miller resorts to *dicta* inferring that the claimant had "particular levels of disability that would be permanent, absent further treatment" (Hoven at 680), suggesting that Hoven leaves open the possibility that a claimant might have a permanent disability and not be at MMI because the need for future treatment is always a possibility with an injury. Again, while this sometimes may be true as a practical matter, as a legal matter the holdings in Hoven and Cardwell bind this court and leave no doubt when it comes to calculating Fund liability.