

# In the
# Missouri Court of Appeals
# Western District

**FREDERICK WININGEAR,**

        **Appellant,**

**v.**

**TREASURER OF THE STATE OF MISSOURI-CUSTODIAN 2ND INJURY FUND,**

        **Respondent.**

**WD78398**

**OPINION FILED:**

**November 3, 2015**

## LABOR AND INDUSTRIAL RELATIONS COMMISSION

**Before Division Two:**
**Mark D. Pfeiffer, P.J., Lisa White Hardwick, and James Edward Welsh, JJ.**

Frederick Winingear appeals the Labor and Industrial Relations Commission's denial of his claim for permanent partial disability benefits from the Second Injury Fund. We affirm.

## Background

On February 23, 2011, Frederick Winingear was working as a Security Aide at the Fulton State Hospital when he suffered an injury to his neck ("the primary injury") from a patient putting him in a "choke hold." Winingear promptly reported the incident to his employer, and the employer sent him for medical treatment. Winingear was diagnosed with neck strain. Winingear eventually entered into a settlement agreement with his employer and the employer's insurer for 4% permanent partial disability of the body as a whole, referable to the neck.

Winingear filed a claim against the Second Injury Fund alleging Fund liability for his permanent partial disability due to the combination of his primary neck injury and various preexisting disabilities. On August 4, 2014, the parties appeared before an Administrative Law Judge (ALJ) for a hearing. At the outset, the parties stipulated that Winingear was an employee of Fulton State Hospital when he sustained the injury to his neck on February 23, 2011, and that the injury occurred while he was working in the course and scope of his employment. The issues to be resolved included: (1) whether the claim was timely filed; (2) the nature and extent of his permanent partial disability, and (3) the liability, if any, of the Second Injury Fund.

Winingear testified at the hearing about his primary injury and his preexisting disabilities. He stated that, even after being treated for the February 2011 primary injury, he continues to have stiffness and range of motion problems in his neck but that the problems were not as bad as they were before. He testified that, following treatment, his neck pain has averaged a 3 or 4 on a 10-point scale. As to his prior injuries, Winingear stated that he injured his left shoulder, chest, and ribs in an incident on September 17, 2010, when he and other staff members were dealing with a combative patient. He sought treatment for those injuries and eventually had an arthroscopic repair of the left shoulder. Winingear thereafter settled with his employer for 20% of the left shoulder and 3% of the body as a whole, referable to the chest. Winingear testified about ongoing problems with his neck and left shoulder as they relate to his current job at the Dollar General Warehouse. He stated that he limits himself at work as to how much and how high he lifts due to his preexisting shoulder injury and that he has problems with looking up and working overhead, which he attributed to both his neck and his shoulder injury.

In September 2012, Winingear was evaluated by Dr. Raymond Cohen. Winingear introduced the doctor's report into evidence at the hearing. Dr. Cohen concluded, based on his

examination of Winingear and his review of Winingear's medical records, that Winingear had diagnoses and resulting medical conditions that were a direct result of his 2010 and 2011 work injuries. He found that, as a result of the September 17, 2010 work injury, Winingear has permanent partial disabilities of 40% at the left shoulder level and 5% of the whole person at the chest level. Regarding the February 23, 2011 injury, Dr. Cohen opined that Winingear has a 10% permanent partial disability of the whole person at the cervical spine level. Dr. Cohen also agreed with Winingear's other previously adjudicated awards of 12.5% to the head/neck from a December 1, 2009 work-related injury, and a 12% whole body injury from a 1993 work-related injury to the neck. Dr. Cohen opined that

> [Winingear]'s preexisting conditions or disabilities combine with the primary work-related injuries to create a greater overall disability than their simple sum. Due to the multiplistic effect, there is a load factor of 15%. His preexisting conditions or disabilities are industrially disabling.

The ALJ denied Winingear's claim against the Fund, and the Commission affirmed and adopted the ALJ's Award. The Commission found that Winingear has preexisting permanent partial disabilities of 20% of the left shoulder and 3% of the body as a whole (referable to the chest) that are a hindrance or obstacle to his employment, and that his primary injury resulted in a 4% permanent partial disability of the body as a whole, referable to the neck. It found, however, that "the credible and convincing evidence does not establish that there was the required synergy between the primary injury and the pre-existing condition(s)."[1] The Commission denied the claim for compensation from the Fund and held that all other issues are moot.

---

[1]As more fully explained *infra*, Second Injury Fund liability exists only if the primary injury combines with preexisting disabilities to cause greater overall disability than the independent sum of the disabilities; this is referred to as the "synergistic effect." *See Pierson v. Treasurer of State*, 126 S.W.3d 386, 388-89 (Mo. banc 2004).

**Discussion**

Our review of the Commission's decision is governed by article V, section 18, of the Missouri Constitution and section 287.495, RSMo.[2] Article V, section 18, provides for judicial review of the Commission's award to determine whether the decision is authorized by law and whether it is "supported by competent and substantial evidence upon the whole record."[3] Under section 287.495, we must affirm unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists to warrant the making of the award. In order to determine whether the award is supported by sufficient competent and substantial evidence, *i.e.*, is contrary to the overwhelming weight of the evidence, we examine the evidence in the context of the whole record, viewing the evidence objectively. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003). In the absence of fraud, however, the Commission's findings of fact are "conclusive and binding." § 287.495.1. Thus, we "defer to the commission on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence." *Treasurer of State-Custodian of Second Injury Fund v. Witte,* 414 S.W.3d 455, 460 (Mo. banc 2013).

Section 287.220 sets forth the provisions of the Second Injury Fund and imposes liability on the Fund in certain cases of permanent disability where there is a preexisting disability. *Lewis v. Treasurer of State,* 435 S.W.3d 144, 152 (Mo. App. 2014). The purpose of the Fund is "to encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury." *Witte*, 414 S.W.3d at 460 (citation omitted).

---

[2]Statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cum. Supp.

[3]Where, as here, the Commission affirms or adopts the findings of an ALJ, we review the decision and findings of the ALJ as adopted by the Commission. *Calvert v. Treasurer of State*, 417 S.W.3d 299, 312 (Mo. App. 2013).

Here, Winingear sought recovery for permanent partial disability benefits from the Fund. "Permanent partial disability" means a disability that is permanent in nature and partial in degree. § 287.190.6(1). For the Fund to be liable for such benefits under section 287.220.2,[4] the claimant must prove that he incurred a compensable injury that resulted in a permanent partial disability and that, when he incurred that injury, he had a preexisting permanent partial disability (whether compensable or not) that was of such seriousness as to constitute a hindrance or obstacle to employment or re-employment and which meets certain statutory thresholds. *Hoven v. Treasurer of State, Custodian of Second Injury Fund,* 414 S.W.3d 676, 678 (Mo. App. 2013). In addition, the claimant must establish that the present compensable injury and his preexisting permanent partial disability combined to cause a greater degree of disability than the simple sum of the disabilities viewed independently. *Id.* This is referred to as the "synergistic effect." *Pierson v. Treasurer of State*, 126 S.W.3d 386, 388-89 (Mo. banc 2004).

If a claimant establishes that the two disabilities combined result in a greater disability than that which would have occurred from the last injury alone, then the Fund is liable for the degree of the combined disability that exceeds the numerical sum of the preexisting disabilities and the disability from the last injury, or the "synergistic effect" of the combined disabilities. *Witte*, 414 S.W.3d at 467 (citing *Pierson*, 126 S.W.3d at 389). In other words, the Fund is liable only for the amount attributable to the synergistic combination. Thus, the failure to prove a synergistic combination between the primary injury and a preexisting disability is proper grounds for denying Fund liability. *See Calvert v. Treasurer of State*, 417 S.W.3d 299, 314 (Mo. App.

---

[4]In 2013, the General Assembly amended section 287.220 to change eligibility for benefits for injuries occurring after January 1, 2014. *See Witte*, 414 S.W.3d at 461 n.3. Those new requirements are set forth in subsection .3 of section 287.220; subsection .2 applies to injuries that occurred before that date. As the injuries in this case occurred in 2010 and 2011, subsection .2 controls. *See id.*

5

2013) (reversing a portion of the Commission's award of Fund benefits after finding that there was "nothing before the Court" in the transcript or record constituting evidence of a "synergistic effect" between a certain preexisting disability and the primary injury).

Here, the Commission found that Winingear established that his primary injury resulted in a permanent partial disability and that, at the time of the primary injury, he had preexisting permanent partial disabilities referable to his shoulder and chest. The Commission even agreed that the preexisting disabilities constituted a hindrance or obstacle to employment at the time of the primary injury. The Commission concluded, however, that Winingear failed to establish that there was any "synergistic effect" as a result of the combination of the injuries.

*In Point I*, Winingear argues that the Commission erred in concluding that there was insufficient evidence of a "synergistic effect" to trigger Second Injury Fund liability. He contends that the facts found by the Commission do not support the award and that the evidence in the record does not warrant the making of the award, in that both he and Dr. Cohen testified to "a preexisting obstacle and a synergistic effect." Winingear cites his own testimony that he had difficulty working overhead due to the combination of his primary neck injury and his preexisting shoulder injury. He cites Dr. Cohen's opinion (1) that his preexisting disabilities were "industrially disabling" and combined with the "primary work-related injury to create an overall disability greater than their simple sum" and (2) that, due to the multiplicity of the preexisting and primary disabilities, a load factor of 15% should be applied. He contends that this constituted sufficient evidence of a synergistic effect so as to trigger Fund liability.

It is the claimant's burden to prove all of the elements of his workers' compensation claim to a reasonable probability. *Hoven*, 414 S.W.3d at 678. Here, the Commission concluded that Winingear failed to prove the "synergistic effect" of his claim and, thus, was not entitled to

6

benefits from the Fund.  *See Calvert*, 417 S.W.3d at 314.  Winingear's burden on appeal is to prove that the Commission's award is against the overwhelming weight of the evidence in light of the Commission's credibility determinations and factual findings, by which we are bound.  *See Hampton,* 121 S.W.3d at 222-23 (equating an award that is not supported by competent and substantial evidence to one that is contrary to the overwhelming weight of the evidence); *Calvert*, 417 S.W.3d at 306-07; § 287.495.1.  He fails to satisfy that burden.

Here, the Commission did not believe that "the credible and convincing evidence . . . establish[ed] that there was the required synergy."  The Commission explained:

> [Winingear] did not testify as to a synergistic effect:  at least he did not do so clearly and convincingly.[5] . . . .  Although [Dr. Cohen's] report contains his opinion that there is a greater overall disability, Dr. Cohen does not explain how the conditions or disabilities combined to create the greater overall disability.  Moreover, [Winingear]'s testimony does not support Dr. Cohen's opinion that the primary injury combined synergistically with the pre-existing injury.  [Winingear] did not testify to an enhanced or synergistic effect, and the medical records (other than those of Dr. Cohen) do not reflect that there was such an effect.

The Commission specifically did "*not* find Dr. Cohen's opinion in this case as to the synergistic effect to be credible or persuasive."

"The Commission is free to believe or disbelieve any evidence," and, as noted, "we defer to the Commission's credibility determinations and to the weight it accords testimony and evidence." *Treasurer of the State of Mo.-Custodian of the Second Injury Fund v. Cook*, 323 S.W.3d 105, 110 (Mo. App. 2010).  Moreover, under section 287.495.1, the Commission's factual findings are "conclusive and binding," and, thus, we look to the facts as found by the

---

[5]We understand the Commission's use of the phrase "clearly and convincingly" here to mean that it did not find Winingear's testimony credible or persuasive; we find the Commission's use of that phrase unfortunate in this context, however, because "clear and convincing" is not a standard of review that is applicable to this case.  That said, if testimony is deemed by the Commission as lacking credibility, it matters not whether the Commission was reviewing such testimony under the correct lens of review (more likely true than not) or the incorrect lens of review (clear and convincing). Testimony lacking credibility fails to satisfy either lens of review and the Commission's misstatement in its ruling is, at most, harmless error.

Commission to assess the propriety of the Commission's result. *Calvert*, 417 S.W.3d at 306-07. "The Commission was free to reject even uncontradicted and unimpeached testimony if reference to the . . . award shows that the Commission's disbelief of [that testimony] was the basis for the award." *Lewis v. Kansas Univ. Med. Ctr.*, 356 S.W.3d 796, 801 (Mo. App. 2011).

Such is the case here. The Commission specifically found that Winingear did not testify "clearly and convincingly" as to a synergistic effect between his disabilities. The Commission also noted that Dr. Cohen's disability ratings were out of line with the actual settlement amounts, and it specifically found that Dr. Cohen was ***not*** credible or persuasive on the issue of synergy. As with other witnesses, the weight and credibility given to a medical expert's opinion is entirely within the Commission's discretion. *Pace v. City of St. Joseph*, 367 S.W.3d 137, 152 (Mo. App. 2012). The Commission further pointed out that Dr. Cohen provided no explanation for his synergy opinion, and it found that neither the medical records, nor Winingear's testimony, supported the doctor's conclusions. Although Winingear relies exclusively on his own testimony and Dr. Cohen's opinion in this appeal, because the Commission deemed them to be not convincing or credible, respectively, we *cannot* rely on that evidence to reverse the Award.

Winingear also fails to identify any specific factual finding by the Commission as to synergy that does not support the Award. The Commission found that Winingear was not convincing and that Dr. Cohen was not credible on the issue of synergy and denied benefits on that basis; thus, the Commission's findings are consistent with its Award.[6]

In sum, Winingear presents no arguments that would permit this Court, under our standard of review, to reverse the Commission's decision. Deferring to the Commission on the

---

[6]Winingear suggests that, because his injuries were not beyond the realm of lay understanding, Dr. Cohen's opinion was not necessary in any event. Even if true, we fail to see how this assists Winingear as the Commission was unconvinced by Winingear's testimony, which was the only other supportive testimony.

8

weight of the evidence and witness credibility, as we must, we find that there was competent and substantial evidence to support the Commission's denial of Fund liability. The point is denied.

*In Point II*, Winingear argues that the Commission erred in not making a ruling as to whether his claim against the Second Injury Fund was time barred under section 287.430, RSMo.[7] He contends, citing various authorities, that the Commission should have found that his claim was timely because it was filed within one year of the Stipulation for Compromise Settlement, which constituted a "claim" within the meaning of the applicable statute.

The Commission did not err in not addressing this issue because its denial of the claim on the issue of synergy was dispositive. "Issues that are not essential to a disposition of the case should not be addressed." *Int'l Div., Inc. v. DeWitt & Assoc., Inc.*, 425 S.W.3d 225, 233 (Mo. App. 2014) (citations omitted). The Commission properly declined to address the timeliness issue because it was not essential to the disposition of this case. The point is denied.

Based on the foregoing, we affirm the Commission's Award.


/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge


All concur.

---

[7]Section 287.430 requires a claim against the Fund to be filed "within two years after the date of the injury or within one year after a claim is filed . . . whichever is later." Winingear filed his original claim against the Fund on May 6, 2011, in conjunction with his workers' compensation claim. Believing that his February 2011 primary injury was under the threshold requirements of section 287.220, he dismissed his claim against the Fund in February 2013. Following the Missouri Supreme Court's holding in *Witte*, 414 S.W.3d at 466, that the statute does not require the *primary* injury to meet a numerical threshold, Winingear refiled his claim against the Fund on December 5, 2013; hence, the timeliness issue.