

# In the Missouri Court of Appeals
# Eastern District

**DIVISION TWO**

| | | |
|---|---|---|
| BRUCE KRYSL, | ) | No. ED109568 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from Labor and |
| | ) | Industrial Relations Commission |
| vs. | ) | |
| | ) | |
| TREASURER OF MISSOURI AS | ) | |
| CUSTODIAN OF SECOND INJURY FUND, | ) | |
| | ) | |
| Respondent. | ) | Filed: February 22, 2022 |

## OPINION

Claimant Bruce Krysl appeals the decision of the Labor and Industrial Relations

Commission (Commission) reversing an award in his favor granting him recovery from the

Second Injury Fund (Fund). We hold that the Commission's conclusion that Krysl did not meet

the statutory requirements for recovery was incorrect and reverse its decision.

### Facts and Procedural Background

This matter resembles quite the legal odyssey with an elongated procedural history that

involves two previous decisions from this court. The underlying factual background was

succinctly summarized in the first of these two decisions, *Krysl v. Treasurer of Missouri*, 591

S.W.3d 13, 14-15 (Mo. App. E.D. 2019) (*Krysl I*).

> In 1994, Krysl was employed as a sculptor for the Veiled Prophets of St. Louis
> ("VP"), carving large characters for parade floats. Krysl's job required him to
> perform repetitive strokes while sculpting the characters. In 2012, Krysl was
> diagnosed with diabetes, requiring treatment for peripheral neuropathy in his

upper and lower extremities, among other symptoms resulting from his diabetes. In 2013, he began to experience numbness and tingling in his right hand while sculpting and was ultimately diagnosed with severe right carpal tunnel syndrome. The parties stipulated his primary compensable occupational injury occurred on January 1, 2013. Krysl underwent surgery for carpal tunnel release and was released to full duty in 2015.

Krysl filed a claim for compensation on July 5, 2016. He settled his primary injury claim against his employer, leaving only the claim against the Fund. An administrative law judge ("ALJ") heard his claim in February 2018.

The evidence presented to the ALJ established that Krysl's preexisting disability was related to his diabetes and complications from his diabetes. In early 2012, he experienced some blurry vision, numbness and tingling in his feet and legs, pain and swelling in his right foot and ankle, weakness, neck pain, shortness of breath, right lower extremity swelling with erythema and fever. He was diagnosed with Type II diabetes and hyperglycemia and was hospitalized. Krysl underwent numerous medical procedures in the first half of 2012 related to the effects of his diabetic condition.

A medical expert testifying for Claimant stated that Claimant's diabetes was a systemic condition that would require lifetime care:

> Q.      . . . Do you have an opinion within reasonable medical certainty as to how long the claimant will have to be treated for the [diabetic and diabetes-related] conditions which were definitively diagnosed in April of 2012, eight months prior to the primary injury?
>
> A.      His whole life. I mean, this is a lifelong condition. It's going to deteriorate probably with time. But he's going to need active treatment for these conditions his whole life.

Detailed treatment records show Claimant's ongoing efforts to deal with his diabetic condition, supporting this expert testimony.

The ALJ awarded Krysl permanent partial disability from the Fund. The Commission reversed the ALJ's award, concluding that Krysl's claim was precluded by the Commission's interpretation of § 287.220.3,[1] which governs claims for injuries occurring after January 1, 2014.

Krysl appealed and the court reversed the Commission's decision in *Krysl I*, holding that § 287.220.3 did not apply to Krysl's claim because the primary injury occurred prior to January 1, 2014. In doing so, this court stated that the Commission's interpretation was not supported by the statutory language. *Krysl I*, 591 S.W.3d at 17. Thus, this court held as a matter of law that Krysl's claim was covered by § 287.220.2, which applies to claims for injuries occurring prior to January 1, 2014. *Krysl I*'s holding directed the Commission to reinstate the ALJ's award of permanent partial disability benefits.

Following the entry of the reinstated award, another appeal followed, which the Fund initiated this time. In *Krysl v. Treasurer of Missouri*, 615 S.W.3d 843, 850-51 (Mo. App. E.D. 2020) (*Krysl II*), this court concluded that *Krysl I*'s direction requiring the Commission to reinstate Krysl's award was premature due to inadequate briefing in the first appeal. We remanded the matter to give the Fund an opportunity to be heard on its "challenge to the permanency of Claimant's preexisting disability" under § 287.220.2. *Id*. at 850.

After this second remand, this case was not briefed or re-argued before the Commission and the parties did not present any additional evidence. The Commission again reviewed the ALJ's original decision awarding Krysl permanent partial disability and reversed it. In reaching its decision, the Commission stated that Krysl "failed to establish that his preexisting condition of diabetes was permanent in degree prior to his January 1, 2013, primary injury because he

---

[1] All statutory references are to RSMo. 2016 unless otherwise noted.

underwent significant treatment for his diabetic condition after that date." Krysl challenges this decision on appeal.

**Standard of Review**

Our review of the Commission's decision is governed by article V, section 18, of the Missouri Constitution and § 287.495. Article V, section 18, provides for judicial review of the Commission's award to determine whether the decision is authorized by law and whether it is "supported by competent and substantial evidence upon the whole record." Under § 287.495, we must affirm unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists to warrant the making of the award. To decide whether the Commission acted in excess of its powers we review the relevant statutes governing its decisions and our interpretation of those statutes is conducted *de novo*. *Cosby v. Treasurer of State*, 579 S.W.3d 202, 205-06 (Mo. banc 2019).

**Discussion**

Krysl's points on appeal challenge both the Commission's statement of the relevant legal standard and the Commission's factual findings applying that legal standard. We begin by discussing the correct legal standard.

Krysl's right to recover from the Fund is purely defined by statute. The requirements to receive an award from the fund are set out in § 287.220. In 2013, the legislature amended § 287.220 to limit the number of workers eligible to receive benefits because the Fund was insolvent. *Treasurer of State v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021). Section 287.220.2 (subsection two) applies to injuries occurring before January 1, 2014. Section 287.220.3 (subsection three) covers injuries occurring after that date. In *Krysl I*, this court

4

concluded that this case is governed by subsection two. Subsection two allows for a claim for permanent partial disability (PPD), but subsection three does not. *Parker*, 622 S.W.3d at 181.[2]

When interpreting this statute, our job is to "ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Cosby*, 579 S.W.3d at 206 (quoting *Mantia v. Missouri Dep't of Transp.*, 529 S.W.3d 804, 809 (Mo. banc 2017)). Words that are not defined in the statute are given their ordinary dictionary meaning. *Gross v. Parson*, 624 S.W.3d 877, 884 (Mo. banc 2021). We also consider the context in which a word is used, both in relation to the entire statute and sections relating to the same subject matter, to ascertain the meaning of the words used by the legislature. *Id*. at 885; *see also S. Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009). This court strictly construes the provisions of § 287.220. *See Cosby*, 579 S.W.3d at 206 (citing *Treasurer of Missouri v. Witte*, 414 S.W.3d 455, 461 (Mo. banc 2013)). We cannot add words to the statute or take them away. *Cosby*, 579 S.W.3d at 207 n.4; *Parker*, 622 S.W.3d at 181, *Krysl I*, 591 S.W.3d at 15; *see also Lin v. Ellis*, 594 S.W.3d 238, 242 (Mo. banc 2020) ("This Court will not add words to a statute under the auspice of statutory construction.").

Subsection 2 is a complex subsection that includes a number of distinct analytical elements.[3] Only one of those elements is in dispute here: the requirement that Claimant must

---

[2] While the two subsections resemble one another in certain respects, the language and requirements of the two provisions are distinct. The analysis stated here therefore only applies to the dwindling set of remaining claims for injuries occurring before January 1, 2014. For injuries occurring after that date, subsection three applies. For subsection three purposes, issues similar to those in this appeal were recently discussed in *Parker*, 622 S.W.3d at 181-82.

[3] A single sentence in that subsection contains the primary language at issue in this appeal. That sentence is as follows:

> If any employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed, and the preexisting permanent partial disability, if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, according to the medical standards that are used in determining such compensation,

have a preexisting permanent partial disability. *See Winingear v. Treasurer of State*, 474 S.W.3d 203, 208 (Mo. App. W.D. 2015) (paraphrasing statutory elements). This question was first raised in *Krysl II* and this court remanded this case so that it could be addressed. *See Krysl II*, 615 S.W.3d at 850 (remanding to hear the Fund's "challenge to the permanency of Claimant's preexisting disability"). The statutory basis for this essential element is located in subsection two's language requiring that a claim be made by an employee "who has a preexisting permanent partial disability." § 287.220.2. The statute further defines "permanent partial disability" as "a disability that is permanent in nature and partial in degree." § 287.190.6(1).

As a reviewing court, our duty is to give effect to the plain and ordinary meaning of these words. We cannot add to or subtract from the words used in the statute. In some cases, it is helpful to consider dictionary definitions, cognate or companion statutes, or other similar resources to elucidate the plain understanding of the legislative language. Here, it is unnecessary to go beyond the statutory language on its face: The statute required Claimant to prove a "preexisting permanent partial disability," i.e., "a disability that is permanent in nature and partial in degree," and we are required to apply that statutory legal standard to the facts. The Commission's holding deviates from the statutory language by stating that Claimant failed to show that his preexisting condition of diabetes was "permanent in degree." While we defer to the Commission's determinations, the statutory language must be observed. According to the statute, the legal standard applicable in this matter requires that Claimant must show a preexisting

receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability, in an amount equal to a minimum of fifty weeks compensation, if a body as a whole injury or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability.

6

permanent partial disability, meaning a disability that is permanent in nature and partial in degree.

Having established the correct legal standard based on the statutory text, we now turn to the application of that standard to the factual record. The question is whether, based on the factual record provided below, Claimant's preexisting disability (diabetes) is "permanent" (or "permanent in nature") as that term is ordinarily understood.

Reviewing the record, we are unable to locate competent evidence supporting the Commission's conclusion that Claimant's preexisting diabetes condition is not permanent. The expert testimony established that diabetic conditions are lifelong and that Claimant will need active treatment for the duration of his life. These facts establish that Claimant's diabetic condition is "permanent" (and "permanent in nature") as that word is ordinarily understood and as a matter of plain language. The expert testimony adduced was unimpeached and unrebutted, and the Commission did not find that it lacked credibility. In an effort to support the Commission's decision, the Fund cites medical records showing that Claimant's diabetes was treated, improved, and stabilized. But these facts, accepted as true, do not support a conclusion that Claimant's diabetes is temporary. Applying the legal standard mandated by the legislature to these undisputed facts, we are forced to reverse the Commission's decision.[4]

---

[4] In reaching its conclusion, the Commission appears to have relied on its interpretation of *Hoven v. Treasurer of State*, 414 S.W.3d 676 (Mo. App. E.D. 2013), and *Miller v. Treasurer, State*, 425 S.W.3d 218 (Mo. App. E.D. 2014). Both of these matters involved preexisting compensable workplace injuries and the courts concluded that claimants failed to demonstrate that their injuries were permanent and that recovery was not possible. Here, the competent evidence in the record uniformly demonstrates that Claimant's diabetes was a permanent, lifelong condition so *Miller* and *Hoven* do not apply. *Cardwell v. Treasurer of State of Missouri*, 249 S.W.3d 902 (Mo. App. E.D. 2008), also cited by the Fund, dealt primarily with the question of when workers' compensation benefits begin and end and also does not apply here. *See Lewis v. Treasurer of the State of Missouri*, 435 S.W.3d 144 (Mo. App. E.D. 2014) (discussing *Cardwell*).

## Conclusion

The Commission's decision is reversed and remanded with instructions to reinstate the ALJ's award of permanent partial disability benefits.

_____
Thomas C. Clark II, Judge

Robert M. Clayton III, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.